**In re WEEKLEY HOMES, L.P.**

No. 04–0119.

Supreme Court of Texas.

Argued Nov. 30, 2004.

Decided Oct. 28, 2005.

Raul A. Gonzalez, Susan Kidwell, Locke Liddell & Sapp, LLP, Austin, and N. Terry Adams, Beirne Maynard & Parsons, L.L.P., Houston, for relator.

James Craig Orr Jr. and Spencer P. Browne, Heygood Orr & Reyes, L.L.P., Irving, for real party in interest.

Justice BRISTER delivered the opinion of the Court.

We are asked to decide whether Weekley Homes, L.P., a party to a contract containing an arbitration clause, can compel arbitration of a personal injury claim brought by Patricia Von Bargen, a nonparty. We have previously compelled arbitration by nonparties to an arbitration agreement when they brought suit "based on a contract,"[1] which Von Bargen purports to avoid here.

■ But as both state and federal courts have recognized, nonparties may be bound to an arbitration clause when the rules of law or equity would bind them to the contract generally. Because we find those rules applicable here, we conditionally grant mandamus relief.

## I. Background

In the summer of 2000, Vernon Forsting contracted with Weekley for construction of a 4,000 square foot home at a purchase price of $240,000. At the time, Forsting was a seventy-eight year-old widower with an assortment of health problems. His intention in purchasing such a large home was to live with his daughter, Von Bargen (his only child) and her husband and three sons.

Von Bargen and her husband negotiated directly with Weekley on many issues before and after construction—paying a $1,000 deposit, selecting the floor plan, signing a letter of intent as "purchasers," and making custom design choices.

But only Forsting executed the various financing and closing documents on the home, including the Real Estate Purchase Agreement that contained the following arbitration clause:

Any claim, dispute or cause of action between Purchaser and Seller ..., whether sounding in contract, tort, or otherwise, shall be resolved by binding arbitration.... Such claims, disputes or causes of action include, but are not limited to, those arising out of or relating to ... the design, construction, preparation, maintenance or repair of the Property.

Shortly after closing, Forsting transferred the home to the Forsting Family Trust, a revocable trust established ten years earlier whose sole beneficiary was Von Bargen. At his deposition, Forsting testified that the only reason he signed the Purchase Agreement individually rather than as trustee was because he "forgot to put [the home] in the trust." Forsting and Von Bargen served as the only trustees of the Trust, the purpose of which was to transfer Forsting's property to Von Bargen after his death.

According to the plaintiffs' pleadings, numerous problems arose with the home after completion. When the family moved out of the house briefly so Weekley could perform some of those repairs, it was Von Bargen who requested and received reimbursement. Indeed, Von Bargen admitted handling "almost ... all matters related to the house, the problems and the warranty work and even the negotiations."

Unsatisfied with the home and Weekley's efforts to repair it, Forsting, Von Bargen, and the Trust filed suit against Weekley in December 2002. Forsting and the Trust asserted claims for negligence, breach of contract, statutory violations, and breach of warranty. Von Bargen sued only for personal injuries, alleging Weekley's negligent repairs caused her to develop asthma.

Weekley moved to compel arbitration of all claims under the Federal Arbitration

1. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex.2001).

Act (FAA).[2] The trial court concluded the FAA applied, and granted the motion as to all claims by Forsting and the Trust. But the trial court refused to compel arbitration of Von Bargen's claim because she did not sign the Purchase Agreement.

■ Mandamus relief is proper to enforce arbitration agreements governed by the FAA.[3] After the Fifth Court of Appeals denied Weekley's request for such relief, Weekley filed a similar request in this Court.

## II. Governing Law

■ Neither party challenges the trial court's conclusion that the FAA governs the arbitration clause here.[4] Under the FAA, absent unmistakable evidence that the parties intended the contrary, it is the courts rather than arbitrators that must decide "gateway matters" such as whether a valid arbitration agreement exists.[5] Whether an arbitration agreement is binding on a nonparty is one of those gateway matters.[6]

■ Texas courts apply Texas procedural rules in making that determination.[7] Those rules call for determination by summary proceedings,[8] with the burden on the moving party to show a valid agreement to arbitrate.[9]

■ But as we recently noted, it is not entirely clear what substantive law governs whether a nonparty must arbitrate.[10] Generally under the FAA, state law governs whether a litigant agreed to arbitrate,[11] and federal law governs the scope of an arbitration clause.[12] Whether

2. *See* 9 U.S.C. §§ 1–16.

3. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 n.2 (Tex.1999) (per curiam); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87–88 (Tex.1996) (per curiam).

4. Although Von Bargen asserts that her personal injury claim cannot be arbitrated under the Texas Arbitration Act as it was not signed by an attorney, *see* TEX. CIV. PRAC. & REM. CODE § 171.002(a)(3), (c), she does not challenge the trial court's conclusion that the FAA governs here. The FAA not only contains no such limitation, but also preempts any state requirements that apply only to arbitration clauses. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

5. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003); *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407, 123 S.Ct. 1531, 155 L.Ed.2d 578 n.2 (2003).

6. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

7. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex.1992).

8. *Id.* at 269.

9. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003).

10. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738–39 (Tex.2005); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 87, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (Thomas, J., concurring) (suggesting Supreme Court sometimes looks to federal law and sometimes law chosen by parties); *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 n.6 (5th Cir. 2004) (noting that whether state or federal law of arbitrability applies "is often an uncertain question").

11. *Doctor's Assocs.*, 517 U.S. at 686–87, 116 S.Ct. 1652; *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Perry v. Thomas*, 482 U.S. 483, 492, 107 S.Ct. 2520, 96 L.Ed.2d 426, n.9 (1987). Parties may also agree that state law governs their arbitration. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

12. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

a nonparty must arbitrate can involve aspects of either or both. Pending an answer from the United States Supreme Court,[13] we apply state law while endeavoring to keep it as consistent as possible with federal law.[14]

### III. Estoppel and Nonsignatories

Texas law has long recognized that nonparties may be bound to a contract under various legal principles.[15] Although we have never considered these principles in the context of arbitration, we recently noted that contract and agency law may bind a nonparty to an arbitration agreement.[16] Indeed, if Texas law would bind a nonparty to a contract generally, the FAA would appear to preempt an exception for arbitration clauses alone.[17]

In the one case in which we have compelled nonparties to arbitrate, *In re First-Merit Bank, N.A.*, 52 S.W.3d 749 (Tex. 2001) we stated that "a litigant who sues based on a contract subjects him or herself to the contract's terms."[18] Because the nonparties there asserted claims identical to the signatories' contract claims, we held all had to be arbitrated.[19]

We did not describe in *FirstMerit* what it means to sue "based on a contract." Von Bargen asserts a narrow interpretation that would apply only to explicit contract claims, and thus not to hers for personal injury; Weekley argues for a broad application to any claim that "arises from or relates to" the contract involved.

We recently adopted an approach between these two extremes, holding that a nonparty may be compelled to arbitrate "if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provisions."[20] As we noted, this rule is consistent with federal law of "direct benefits estoppel."[21]

■ Under both Texas and federal law, whether a claim seeks a direct benefit from a contract containing an arbitration

---

**13.** The United State Supreme Court has not answered this question, though it has applied federal substantive law to bind a nonparty to labor-union arbitration, a field in which federal law has traditionally yielded little deference to state labor-law principles. *See John Wiley & Sons*, 376 U.S. at 548, 84 S.Ct. 909 (citing *Textile Workers Union of Am. v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)).

**14.** *Kellogg*, 166 S.W.3d at 739.

**15.** *See, e.g.*, Tex. Bus. Corp. Act art. 2.21(A)(2) (holding shareholders may be liable for corporation's contracts under alter ego theory if they cause corporation to perpetrate actual fraud for their direct personal benefit); *Stine v. Stewart*, 80 S.W.3d 586, 590 (Tex.2002) (holding third-party beneficiary could enforce contract); *Biggs v. U.S. Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex.1981) (holding agent acting within the scope of apparent authority binds the principal).

**16.** *Kellogg*, 166 S.W.3d at 738. Accordingly, it is no longer true that "the [Texas] decisions do not even mention the possibility of additional bases for binding non-signatories to arbitration." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1076 (5th Cir. 2002).

**17.** *Doctor's Assocs.*, 517 U.S. at 686–87, 116 S.Ct. 1652; *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) ("What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the Act's language and Congress' intent.").

**18.** 52 S.W.3d at 755.

**19.** *Id.* at 755–56.

**20.** *Kellogg*, 166 S.W.3d at 741.

**21.** *Id.*

clause turns on the substance of the claim, not artful pleading.[22] Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it.[23] On the other hand, claims can be brought in tort (and in court) if liability arises from general obligations imposed by law.[24]

We question Weekley's conclusion that this rule will inevitably drive claimants to plead only noncontractual claims to avoid arbitration. Nonparties face a choice when they may plead in either contract or tort, but pleading the former invokes an arbitration clause broad enough to cover both (as most do). If they pursue a claim "on the contract," then they must pursue all claims—tort and contract—in arbitration.[25] Conversely, if they choose not to sue "on the contract," they may pursue the tort claims in court, but the contract claims will thereby likely be waived under the election-of-remedies doctrine.[26] Given these options, it is not clear at this point that nonparties will always choose to for-feit potentially viable contract claims solely to avoid arbitration.

 In this case, Von Bargen purports to make no claim on the Weekley contract, claiming only that she developed asthma from dust created by Weekley's repairs of the home. While Weekley's duty to perform those repairs arose from the Purchase Agreement, a contractor performing repairs has an independent duty under Texas tort law not to injure bystanders by its activities,[27] or by premises conditions it leaves behind.[28] There is nothing in the sparse record here to suggest Von Bargen's claim is different from what any bystander might assert, or what she might assert if the contractor were not Weekley.

 But a nonparty may seek or obtain direct benefits from a contract by means other than a lawsuit. In some cases, a nonparty may be compelled to arbitrate if it deliberately seeks and obtains substantial benefits from the contract itself.[29] The analysis here focuses on the

---

22. *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838–39 (7th Cir. 1981); *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex.1991).

23. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000); *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 105 (Tex.1999); *DeLanney*, 809 S.W.2d at 494.

24. *See, e.g., R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 163–164 (4th Cir. 2004); *InterGen N.V. v. Grina*, 344 F.3d 134, 145–46 (1st Cir. 2003); *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1076–77 (5th Cir. 2002); *DeLanney*, 809 S.W.2d at 494; *see also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998).

25. *See, e.g., Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex.1992) (holding DTPA claim was factually intertwined with contract claim and thus subject to arbitration clause).

26. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980) (holding election-of-remedies doctrine prevents pursuit of inconsistent rights or remedies when result would be manifest injustice); *cf. Medina v. Herrera*, 927 S.W.2d 597, 598–99 (Tex.1996) (holding election-of-remedies doctrine barred pursuit of both workers' compensation claim and suit against employer for intentional act).

27. *See Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex.1985) (noting general contractor on a construction site in control of the premises may be subject to direct liability for negligence arising from: (1) a premises defect, or (2) an activity or instrumentality).

28. *Strakos v. Gehring*, 360 S.W.2d 787, 790 (Tex.1962).

29. *Astra Oil Co., Inc. v. Rover Navigation, Ltd.*, 344 F.3d 276, 281 (2d Cir. 2003) (holding affiliate of signatories could enforce arbitration clause as opposing party treated affiliate as part of charter contract during occurrence

nonparty's conduct during the performance of the contract.[30] Thus, for example, a firm that uses a trade name pursuant to an agreement containing an arbitration clause cannot later avoid arbitration by claiming to have been a nonparty.[31] Nor can nonsignatories who received lower insurance rates and the ability to sail under the French flag due to a contract avoid the arbitration clause in that contract.[32]

■■■■ This Court has never addressed such an estoppel claim in the arbitration context.[33] But we have long recognized in other contexts the defensive theory of promissory estoppel.[34] When a promisor induces substantial action or forbearance by another, promissory estoppel prevents any denial of that promise if injustice can be avoided only by enforcement.[35] Promissory estoppel does not create liability where none otherwise exists,[36] but "prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them."[37]

Here, Von Bargen has not merely resided in the home. Claiming the authority of the Purchase Agreement, she directed how Weekley should construct many of its features, repeatedly demanded extensive repairs to "our home,"[38] personally requested and received financial reimbursement for expenses "I incurred" while those repairs were made, and conducted settlement negotiations with Weekley (apparently never consummated) about moving the family to a new home. Having obtained these substantial actions from Weekley by demanding compliance with provisions of the contract, Von Bargen cannot equitably object to the arbitration clause attached to them.

■■■■ In addition to these benefits, Forsting and the Trust have sued Weekley on claims which are explicitly based on the contract. Under Texas law, a suit involving a trust generally must be brought by or against the trustee, and can be binding on the beneficiaries whether they join it or

involved); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (holding nonsignatories who received lower insurance rates and ability to sail under French flag due to contract were bound by arbitration clause in it); *see also Matter of VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 52 (7th Cir. 1994) (holding wife bound by settlement agreement related to investment services contract signed only by her husband, but under which she had accepted services as well); *see also InterGen*, 344 F.3d at 146 (holding equitable estoppel inapplicable as nonsignatory never sought to derive direct benefits from contracts during their currency).

**30.** *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 n.7 (3d Cir. 2001).

**31.** *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993).

**32.** *Tencara Shipyard*, 170 F.3d at 353.

**33.** *See Kellogg*, 166 S.W.3d at 741 n.9 (reserving question of whether to apply direct-bene-

fits estoppel to benefits obtained from contract rather than subsequent litigation).

**34.** *See, e.g., 'Moore' Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934 (Tex.1972).

**35.** *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex.1997).

**36.** *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex.1988).

**37.** *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965).

**38.** In various lists submitted in the months after the sale, Von Bargen demanded repairs to sagging floors, buckling walls and windows, cracking brick work, as well as replacing the front door, repainting the back door and the kitchen cabinets, regrouting the bathrooms and entry way, replacing the fireplace screen, closing gaps at carpet seams, removing drainage problems in the yard, and a noisy garage door.

not.[39] Although Von Bargen did not purport to sue as either trustee or beneficiary, she was both, and any recovery will inure to her direct benefit as the sole beneficiary and equitable titleholder of the home.[40] As one Texas court has noted, if a trustee's agreement to arbitrate can be avoided by simply having the beneficiaries bring suit, "the strong state policy favoring arbitration would be effectively thwarted."[41]

 While we based our decision in *FirstMerit Bank* on the nonparties' contract-based claims, more was involved in that case than the format of the pleadings. Direct-benefits estoppel requires a colorable claim to the benefits; a meddlesome stranger cannot compel arbitration by merely pleading a claim that quotes someone else's contract. The nonparties in *FirstMerit Bank* were the daughter and son-in-law of the signatories, the actual occupants of the mobile home, and (according to the briefs) the future owners to whom the signatories planned to transfer title. It is hard to see what direct benefits

they expected from that contract that Von Bargen did not expect from this one.

 Like the equitable doctrine of promissory estoppel, we do not understand direct-benefits estoppel to create liability for noncontracting parties that does not otherwise exist. As Von Bargen and Weekley had no contract between them, estoppel alone cannot grant either a right to sue for breach.[42] Nor do we understand the doctrine to apply when the benefits alleged are insubstantial or indirect. But once Von Bargen deliberately sought substantial and direct benefits from the contract, and Weekley agreed to comply, equity prevents her from avoiding the arbitration clause that was part of that agreement.

We recognize that direct-benefits estoppel has yet to be endorsed by the United States Supreme Court, and that its application and boundaries are not entirely clear.[43] For example, while federal courts often state the test as whether a nonsignatory has "embraced the contract,"[44] the

**39.** *See* Tex. Prop. Code §§ 111.004(7), 115.011, 115.015; *Huie v. DeShazo*, 922 S.W.2d 920, 926 (Tex.1996)(holding trusts are not legal entities); *Transamerican Leasing Co. v. Three Bears, Inc.*, 586 S.W.2d 472, 476–77 (Tex. 1979) (holding beneficiaries were bound by judgment against trust and trustees, as some participated in trial in their capacity as trustees, and remainder showed neither prejudice, conflict of interest, nor inadequate representation by trustees).

**40.** *Perfect Union Lodge No. 10 v. Interfirst Bank of San Antonio, N.A.*, 748 S.W.2d 218, 220 (Tex.1988) (holding trust beneficiaries hold equitable title to trust property); *cf. Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 627 (6th Cir. 2003) (holding arbitration agreements were binding on receiver who succeeded to interests of entities that signed them); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153–54 (3d Cir. 1989) (holding arbitration agreements were binding on successor trustee in bankruptcy).

**41.** *Merrill Lynch, Pierce, Fenner & Smith v. Eddings*, 838 S.W.2d 874, 879 (Tex.App.-Waco 1992, writ denied).

**42.** *See Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 734 (Tex.1981) (holding estoppel based on division orders could not permanently amend underlying lease).

**43.** See e.g., J. Douglas Uloth & J. Hamilton Rial, III, *Equitable Estoppel as a Basis for Compelling Nonsignatories to Arbitrate—A Bride Too Far?*, 21 Rev. Litig. 593 (2002).

**44.** *See, e.g. InterGen*, 344 F.3d at 145; *DuPont*, 269 F.3d at 200; *Peltz ex rel. Peltz v. Sears, Roebuck & Co.*, 367 F.Supp.2d 711, 721 (E.D.Pa. 2005); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F.Supp.2d 1107, 1138 (D.Kan. 2003); *Amkor Tech., Inc. v. Alcatel Bus. Sys.*, 278 F.Supp.2d 519, 521–22 (E.D.Pa. 2003); *Cherry Creek Card & Party Shop, Inc. v. Hallmark Mktg. Corp.*, 176 F.Supp.2d 1091, 1098 (D.Colo. 2001).

metaphor gives little guidance in deciding what particular conduct embraces or merely shakes hands with it. Indeed, the equitable nature of the doctrine may render firm standards inappropriate, requiring trial courts to exercise some discretion based on the facts of each case.[45]

■ But we agree with the federal courts that when a nonparty consistently[46] and knowingly[47] insists that others treat it as a party, it cannot later "turn[ ] its back on the portions of the contract, such as an arbitration clause, that it finds distasteful."[48] A nonparty cannot both have his contract and defeat it too.

While Von Bargen never based her personal injury claim on the contract, her prior exercise of other contractual rights and her equitable entitlement to other contractual benefits prevents her from avoiding the arbitration clause here. Accordingly, the trial court abused its discretion in failing to compel arbitration. We conditionally grant the writ of mandamus and order the trial court to vacate that part of its order denying Weekley's motion, and to enter a new order compelling arbitration of Von Bargen's claim. We are confident the trial court will comply, and our writ will issue only if it does not.

Justice WILLETT did not participate in the decision.

45. *See, e.g., Bridas S.A.P.I.C. v. Turkmenistan,* 345 F.3d 347, 360 (5th Cir. 2003) ("The use of equitable estoppel is within a district court's discretion."); *accord, Hill v. G.E. Power Sys., Inc.,* 282 F.3d 343, 348 (5th Cir. 2002); *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 528 (5th Cir. 2000).

46. *See Int'l Paper,* 206 F.3d at 418 (estopping nonsignatory from denying agreement to arbitrate "when he has *consistently* maintained that other provisions of the same contract should be enforced to benefit him.") (emphasis added).

47. *See Bridas,* 345 F.3d at 361–62 ("Direct[-]benefits estoppel applies when a nonsignatory *'knowingly* exploits the agreement containing the arbitration clause.'") (emphasis added) (citing *DuPont,* 269 F.3d at 199); *Tencara Shipyard,* 170 F.3d at 353 (requiring nonsignatories to arbitrate pursuant to provision in contract they neither requested nor executed, as they had *duty to obtain that* contract and received copies of it).

48. *DuPont,* 269 F.3d at 200; *accord Astra Oil Co.,* 344 F.3d at 281.