In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO.  09-12-00472-CV
_____


RAYMOND JAMES FINANCIAL SERVICES, INC.
AND TIMOTHY CARL SATRE, Appellants

V.

JUNE ANGELINA PEVETO F/K/A JUNE STRANGE, Appellee

**On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-191,309**

**MEMORANDUM OPINION**

The trial court denied a motion to compel arbitration filed by Raymond James Financial Services, Inc. and Timothy Carl Satre. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West Supp. 2012). Asserting direct-benefits estoppel and third-party beneficiary principles, appellants contend that an arbitration agreement with their client controls the claims made by June Strange. We conclude that the doctrine of direct-benefits estoppel applies, and that the trial court therefore abused

its discretion in denying the motion to compel arbitration. The trial court's order is reversed and the case is remanded to the trial court for entry of an order compelling arbitration.

## THE AGREEMENTS

John Robert Peveto won money in the Texas Lottery. He created a family investment partnership called JRP Investments, L.P. (JRPI). He was the managing partner. As explained in the affidavit of Timothy Satre, a defendant in this suit and a financial advisor and broker at Raymond James Financial Services, Inc., Peveto opened an account at Raymond James in the name of the family partnership. In opening the account, Peveto executed a New Account Form containing language incorporating a Client Agreement. The following provision is in the Client Agreement:

> Any dispute or controversy, either arising in the future or in existence now, between me and you (including your officers, directors, employees or agents . . .) will be resolved by arbitration . . . .

The Client Agreement defines "me" as the "undersigned" client and "any other actual or beneficial owner of property in this account." The opening paragraph of the Client Agreement defines "you" as "Raymond James & Associates, Inc. and the introducing broker, if applicable." In the agreement's arbitration clause, "you" is further defined to include "your officers, directors, employees, or agents[.]" The

Client Agreement states that arbitration will be conducted in accordance with the Federal Arbitration Act.

Satre explained by affidavit that he and Peveto "met often to discuss the investments in the Family Partnership Account, and in Mr. Peveto's other accounts at [Raymond James], and his overall estate plans." Satre related that Peveto "said that he would like to leave [June] Strange $200,000 upon his death." Peveto was dating Strange, whom he later married. Satre stated he and Peveto "consulted with Mr. Peveto's estate attorney, and decided that the best way to arrange for this gift was to have the Family Partnership [JRPI] purchase an annuity and name Ms. Strange as the beneficiary."

JRPI purchased a Hartford variable annuity with the assistance of Raymond James through its agent Satre. Strange indicates in her appellate brief that Satre, by agreement with Peveto, procured the annuity to fulfill a contractual promise that John Peveto made to her. The Hartford annuity names JRPI as the annuity's owner and Peveto as the annuitant. Strange was the designated beneficiary.

Peveto and Strange subsequently entered into a written agreement that stated as follows:

> John has purchased an annuity through [JRPI] in the face amount of $200,000 and has named June [Strange] beneficiary of the annuity. John agrees not to change the beneficiary designation on the annuity

3

or to cash in the annuity without substituting property of equal value and naming June as beneficiary.

In a letter to Hartford, Peveto subsequently instructed Hartford to make the beneficiary designation irrevocable.

Strange and Peveto married. When Peveto died, Hartford informed JRPI that the check for the annuity's death benefits would be issued to JRPI as owner rather than directly to Strange as beneficiary. A section in the Hartford annuity states, "If the Annuitant dies, and . . . the contract is owned by a corporation or other entity, the Contract Owner will be the Beneficiary. In this case, the rights of the designated Beneficiary are voided."

The record reflects that a lump sum payment was deposited by Hartford directly into the JRPI account at Raymond James. According to Satre, JRPI's general partner, Ronald Peveto, instructed Raymond James to issue a $274,204.36 check from the JRPI account to Strange. It appears Raymond James followed the instructions. The general partner of JRPI later instructed Raymond James to stop payment. According to Satre's affidavit, Ronald Peveto stated he believed Strange owed Peveto's estate reimbursement for certain items or actions. Payment on the check was stopped. Strange settled her dispute with the Peveto estate, and filed suit against Raymond James, Satre, and Hartford Life and Annuity Insurance Company.

4

Strange's suit against Raymond James and Satre includes the following causes of action: breach of contract for appellants' alleged failure to obtain an annuity that paid a death benefit directly to her; DTPA and Texas Insurance Code violations as a result of appellants' alleged knowing and intentional misrepresentation of the annuity's benefits and appellants' alleged failure to disclose the annuity's terms on payment of the death benefits; statutory fraud in misrepresenting the terms of the payment of the annuity's death benefits; and breach of fiduciary duties and theft in stopping payment on the annuity check.

THE ARGUMENTS

Appellants maintain that all of Strange's claims are based on the relationship created by the Client Agreement between JRPI and the appellants. They argue that the Client Agreement contains a valid arbitration provision and that, based on principles of direct benefits estoppel and Strange's status as beneficiary of account property, arbitration is required.

Strange did not sign the New Account Form/Client Agreement containing the arbitration provision. She acknowledges that "[i]nvestment services are the subject matter of the contract on which Satre and RJFS rely[.]" Being a nonsignatory on that contract, she argues she is not bound by the agreement's arbitration clause, and her claims are not based on that agreement. She asserts that

5

her claims are based instead on contracts and agreements that do not contain an arbitration provision: the contract for the Hartford variable annuity; and an alleged contractual promise to Peveto by Satre assuring that Strange would receive the benefits of the annuity when Peveto died. Strange argues that because the Hartford annuity was not held by Raymond James, and because Hartford, not Raymond James or Satre, "made and managed the investments made with the annuity premium[,]" the Client Agreement has no application to her or the Hartford annuity.

NONSIGNATORIES

A party attempting to compel arbitration under the FAA must establish that there is a valid arbitration clause, and that the claims in dispute fall within the scope of the agreement. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011). Arbitration is contractual in nature. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005). Although as a general rule a party must sign an arbitration agreement before she is bound by it, an obligation to arbitrate may also bind a nonsignatory party in appropriate circumstances under principles of contract law and agency. *In re Rubiola*, 334 S.W.3d at 224. The Texas Supreme Court has explained that nonsignatories may be bound under arbitration agreements on the following principles: incorporation by reference, assumption, agency, alter ego,

6

equitable or direct-benefits estoppel, and third-party beneficiary. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739.

DIRECT-BENEFITS ESTOPPEL

Under direct-benefits estoppel principles, a nonsignatory must arbitrate a claim if she seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex. 2006). Whether a claim seeks a direct benefit from the contract turns on the substance of the claim, not artful pleading. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131-32 (Tex. 2005). If liability arises solely from the contract, or must be determined by reference to the contract, the claim must be arbitrated. *Id.* at 132; *In re Advance Payroll Funding, Ltd.*, 254 S.W.3d 710, 713 (Tex. App.—Dallas 2008, orig. proceeding). If the claim by a nonsignatory stands independently of the underlying contract, generally the claim need not be arbitrated. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739-40. Arbitration may not be required if the claimed benefits are insubstantial or indirect. *In re Weekley Homes*, *L.P.*, 180 S.W.3d at 134.

The annuity was purchased from Hartford through the services of Raymond James Financial Services and its agent Satre. The money represented by the annuity was part of the Raymond James account and is listed on the account

statements of JRPI at Raymond James; Raymond James was the custodian of the account.

Strange asserts that neither Satre nor Raymond James had anything to do with choosing, managing, or otherwise dealing with the investments made by Hartford with the annuity premium, and her claim under the annuity has nothing to do with the contract between Raymond James and Satre and Peveto. As agent of Raymond James, however, Satre consulted with Peveto and Peveto's attorney regarding the appropriate financial vehicle to achieve Peveto's goal of giving $200,000 to Strange upon his death. This was part of the investment services provided by Raymond James and Satre under the New Account Form/Client Agreement.

Strange argues her tort claims are general obligations imposed by law and independent of any contract claim. But her breach of contract claim must be determined by reference to the contract between Peveto and Raymond James and Satre. And the Client Agreement broadly provides that "[a]ny dispute or controversy, either arising in the future or in existence now, between me and you . . . will be resolved by arbitration . . . ." When a party pursues "a claim 'on the contract,' then they must pursue all claims -- tort and contract -- in arbitration[]" if the arbitration clause is "broad enough to cover both[.]" *See In re Weekley Homes*,

8

180 S.W.3d at 131-32; *Global Fin. Servs., L.L.C. v. Estate of McLean*, Nos. 04-04-00854-CV, 04-05-00074-CV, 2007 WL 1759940, at **5-6 (Tex. App.—San Antonio June 20, 2007, no pet.) (mem. op). Under these circumstances, she must pursue all her claims in arbitration.

CONCLUSION

The plaintiff's claims derive from the New Account Form/Client Agreement between Raymond James/Satre and Peveto/JRPI. The substance of Strange's claim is that Satre advised Peveto in the selection and purchase of an annuity that, Strange contends, did not meet the requirements Peveto communicated to Satre. Strange seeks to hold Raymond James and Satre liable for investment advice to Peveto. The trial court abused its discretion in denying appellants' motion to compel arbitration. We reverse the order and remand the case to the trial court for entry of an order granting the motion to compel arbitration, and for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
DAVID GAULTNEY
Justice

Submitted on January 18, 2013
Opinion Delivered March 28, 2013

Before McKeithen, C.J., Gaultney and Kreger, JJ.

9