# Supreme Court of Texas

No. 22-0331

Taylor Morrison of Texas, Inc. and Taylor Woodrow
Communities-League City, Ltd.,

*Petitioners*,

v.

Michelle Ha, Individually and as Next Friend of C.M.X., Minor
Child 1, A.H.X., Minor Child 2, and H.R.X., Minor Child 3,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

**PER CURIAM**

Litigants who seek direct benefits from a contract subject themselves to its terms, including any arbitration clause within that contract. In this case, Tony and Michelle Ha, along with their three minor children, sue Taylor Morrison of Texas, Inc., and Taylor Woodrow Communities-League City, Ltd.,[1] for construction defects in their home. Though only Mr. Ha signed the purchase agreement, Taylor Morrison

---

[1] Unless otherwise noted, this opinion will refer to Taylor Morrison and Taylor Woodrow together as "Taylor Morrison."

seeks to compel Mrs. Ha and the children to arbitrate along with Mr. Ha on the basis of direct-benefits estoppel. Mrs. Ha and the children contend that their claims are not subject to the arbitration clause in Mr. Ha's purchase agreement because their claims are not based on the contract. The trial court denied Taylor Morrison's motion to compel arbitration as to Mrs. Ha and the children. The court of appeals affirmed. ___ S.W.3d ___, 2021 WL 6050648 (Tex. App.—Houston [14th Dist.] Dec. 21, 2021). We hold that when a family unit resides in a home and sues for factually intertwined construction-defect claims concerning that home, a nonsignatory spouse and minor children have accepted direct benefits under the signatory spouse's purchase agreement such that they may be compelled to arbitrate through direct-benefits estoppel. This is especially true given the special nature of marital and parent–child relationships.

In March 2015, Tony Ha signed a purchase agreement with Taylor Woodrow[2] for a home in the Mar Bella subdivision of League City, Texas. The purchase agreement includes a provision broadly requiring arbitration of "any and all claims, controversies, breaches or disputes by or between the parties hereto" that "aris[e] out of or relate[] to this purchase agreement, the property, the subdivision or community of which the property is a part, the sale of the property by seller, or any transaction related hereto," whether those claims are based in "contract, tort, statute, or equity."

---

[2] Taylor Woodrow is the party listed as the seller in the purchase agreement. However, the record indicates that Taylor Morrison is a limited partner in Taylor Woodrow.

In February 2020, Mr. Ha sued Taylor Morrison, alleging construction defects and fraud. He was joined in the lawsuit by his wife, Michelle Ha, and their three minor children. The Has allege that the home developed significant mold problems due to construction defects, resulting in physical illness as well as costs for repairs and mold remediation. They asserted claims for breach of implied warranties, negligent construction, fraud in a real-estate transaction, breach of contract, violation of the Residential Construction Liability Act, quantum meruit, and violation of the Deceptive Trade Practices Act. The original petition's claims did not distinguish between Mr. Ha, Mrs. Ha, or the children.

Taylor Morrison moved to compel arbitration with respect to all five plaintiffs. Taylor Morrison also specially excepted—first to the original petition, and then to the first amended petition—seeking greater specificity as to which members of the Ha family were included in each claim. In the Has' second amended petition, all five plaintiffs assert claims for common-law negligence, negligent construction, and violation of the Residential Construction Liability Act. However, only Mr. Ha asserts claims for breach of implied warranties, fraud in a real-estate transaction, breach of contract, and quantum meruit, though Mr. Ha and Mrs. Ha are both mentioned in the DTPA claim. After the Has filed their second amended petition, the trial court granted Taylor Morrison's motion to compel arbitration as to Mr. Ha but denied the motion as to Mrs. Ha and the three children.

On interlocutory appeal, the court of appeals affirmed. The court noted that Taylor Morrison's third-party-beneficiary and direct-

benefits-estoppel arguments had already been rejected in the similar case *Taylor Morrison of Texas, Inc. v. Skufca*, 2020 WL 5823287, at *4-9 (Tex. App.—Houston [1st Dist.] Oct. 1, 2020), *rev'd*, ___ S.W.3d ___ (Tex. Jan. 27, 2023). The court of appeals held that Mrs. Ha and the three children are likewise not bound to arbitrate under direct-benefits estoppel or as third-party beneficiaries of the purchase agreement. 2021 WL 6050648, at *4.

The question before us is whether direct-benefits estoppel requires Mrs. Ha and the children to arbitrate their claims even though they did not sign the purchase agreement.[3] "[N]onparties may be bound to an arbitration clause when the rules of law or equity would bind them to the contract generally." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 129 (Tex. 2005). This Court has recognized several means by which nonsignatories may be bound to an arbitration clause, one of which is direct-benefits estoppel. *See Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633, 637 (Tex. 2018). "Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005). A nonsignatory can seek the benefits of a contract either by suing based on the contract,

---

[3] Taylor Morrison also argues that the trial court improperly denied the motion to compel arbitration as to Mrs. Ha and the children by not holding an evidentiary hearing after the Has filed their second amended petition. Because we reverse the judgment below on direct-benefits-estoppel grounds, we do not reach this issue. In addition, Taylor Morrison does not ask us to review the court of appeals' third-party-beneficiary holding.

*see In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 755 (Tex. 2001), or by conduct that "deliberately seeks and obtains substantial benefits from the contract itself," *Weekley Homes*, 180 S.W.3d at 132. If a nonsignatory seeks the benefits of a contract with an arbitration clause, then the nonsignatory must arbitrate all claims that fall within the scope of that arbitration clause.

This Court has repeatedly applied direct-benefits estoppel in situations in which nonsignatory family members lived in the home that was the subject of the suit. For example, in *FirstMerit Bank*, the parents purchased a mobile home for their adult daughter and son-in-law. 52 S.W.3d at 752. We held that the daughter and son-in-law were subject to an arbitration clause in the parents' financing agreement when the "petition ma[de] no distinction between the parents' claims and the [daughter and son-in-law's] claims." *Id.* at 755-56. But as we later observed, *FirstMerit Bank* involved more than just "the format of the pleadings": the nonsignatories were "the daughter and son-in-law of the signatories, the actual occupants of the mobile home, and (according to the briefs) the future owners to whom the signatories planned to transfer title." *Weekley Homes*, 180 S.W.3d at 134; *see also Rachal v. Reitz*, 403 S.W.3d 840, 846 (Tex. 2013) ("[I]n addition to filing suit on the contract, the Alvarezes' occupancy of the home and planned future ownership of it further indicated their acceptance of the contract."). And in *Weekley Homes*, the signatory's adult daughter was estopped from avoiding arbitration when her elderly father bought the home intending to live in it with the daughter's family, the home was placed in a trust for which the daughter was the sole beneficiary, the daughter resided in

5

the home, and the daughter was actively involved in the home's construction and repair. 180 S.W.3d at 129, 133.

In this case, both the court of appeals and the parties address whether Mrs. Ha and the children sued on Mr. Ha's purchase agreement such that direct-benefits estoppel applies on that basis. However, regardless of whether they asserted contract claims, Mrs. Ha and the children are nevertheless bound to the arbitration provision through direct-benefits estoppel for a different reason: Mrs. Ha and the children lived in the home at issue. Like the nonsignatories in *FirstMerit Bank* and *Weekley Homes*, their occupancy of the home indicates that they accepted the benefits of Mr. Ha's purchase agreement and therefore may be compelled to arbitrate along with Mr. Ha.

The Has' common occupancy alone would make any other conclusion surprising. But splitting the family's claims between litigation and arbitration would be especially odd considering the family-home context and the unique nature of marital and parent–child relationships. The law and common sense need not be at war regarding the proposition that a family's *shared home* is something that will directly benefit the entire family. Even if such a proposition were not generally recognized, the law would nonetheless make it clear. For example, while the record in this case does not state whether Mr. Ha and Mrs. Ha were married at the time of the purchase, the pleadings do claim a community interest in the home for Mrs. Ha.[4] As a general

---

[4] In its original answer and motion to compel arbitration, Taylor Morrison asserted that "Mrs. Ha is now married to Tony Ha and she is therefore his heir as a matter of law," and the Has' counsel has stated that he

matter, property acquired by either spouse during the marriage is community property. *See* TEX. FAM. CODE § 3.002. And if a property serves as the family's homestead, a spouse has vested rights even when that homestead is the other spouse's *separate* property. *See Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991); *see also United States v. Rodgers*, 461 U.S. 677, 685-86 (1983). For example, the Texas Constitution prohibits an owner from selling or abandoning homestead property without the consent of the owner's spouse. *See* TEX. CONST. art. XVI, § 50(b); *see also* TEX. FAM. CODE § 5.001. Therefore, a spouse is clearly receiving direct benefits from the purchase of a home that serves as homestead property, regardless of whether the home is community or separate property.

The parent–child relationship also carries important weight in the arbitration context. Parents are entrusted with the care and protection of their children. While the minor children themselves may not have made the decision to live in the home—and while a minor's own contracts are generally voidable[5]—fit parents are presumed to act in their children's best interests. *See Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 706 (Tex. 2014). Common sense dictates that, when parents move their family into a new home, they are necessarily seeking direct

---

did not know why Mrs. Ha did not sign the purchase agreement. In any event, the Has' second amended petition notes that Mrs. Ha has a community interest in the home as Mr. Ha's wife.

[5] *See Dairyland Cnty. Mut. Ins. Co. v. Roman*, 498 S.W.2d 154, 158 (Tex. 1973). The purpose of this rule is to protect children both from those who would take advantage of them and from their own lack of maturity. *See Cummings v. Powell*, 8 Tex. 80, 90 (1852); *Ferguson v. Houston, E & W.T. Ry. Co.*, 11 S.W. 347, 348 (Tex. 1889).

benefits for their minor children.  Regardless, parents have a legal *duty* to provide their children with shelter and other necessities.  *See* TEX. FAM. CODE § 151.001(a)(3).

Moreover, as a general matter, parents may sign arbitration agreements on behalf of their children.  *See id.* § 151.001(a)(7) (recognizing the right of parents to make "decisions of substantial legal significance" concerning their children).[6]  Parents may equitably bind their children to an arbitration agreement through direct-benefits estoppel by suing based on the contract on their child's behalf.  *See id.* (recognizing parents' right to represent their children in legal action); *Taylor Morrison of Tex., Inc. v. Skufca*, ___ S.W.3d at ___ (Tex. Jan. 27, 2023); *In re Ford Motor Co.*, 220 S.W.3d 21, 23-24 (Tex. App.—San Antonio 2006, orig. proceeding).  In the same way, parents may also equitably bind their children to an arbitration agreement through direct-benefits estoppel by seeking direct benefits for their children from the contract outside of litigation.

From these principles, it follows that when a nonsignatory spouse and children live in a family home purchased by the signatory spouse, the nonsignatory family members have accepted direct benefits from the purchase agreement such that they may be compelled through direct-benefits estoppel to arbitrate when the family sues as an integrated unit

---

[6] In rare cases, an arbitration agreement signed by a parent on a child's behalf may be unenforceable, such as when a parent's interests are adverse to the child's interests.  *See Fortune v. Killebrew*, 23 S.W. 976, 976-77 (Tex. 1893) (declining to enforce an arbitration agreement related to distribution of the maternal grandfather's estate when the father's interests were adverse to those of his minor children).

8

for factually intertwined construction-defect claims.[7] Mrs. Ha and the children may therefore be compelled to arbitrate along with Mr. Ha.

Without hearing oral argument, we grant the petition for review, reverse the judgment of the court of appeals, and remand to the trial court to issue an order consistent with this opinion and for further appropriate proceedings. *See* TEX. R. APP. P. 59.1.

**OPINION DELIVERED:** January 27, 2023

---

[7] We note that, in a case with similar facts, the Fifth Circuit has previously made an *Erie* guess that we would not hold that minor children must arbitrate along with their parents. *See Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1071-72, 1074-77 (5th Cir. 2002) (holding that minor children who alleged personal injuries from formaldehyde exposure in their family's mobile home were not required to arbitrate their claims). Since then, however, our case law on binding nonsignatories to arbitration agreements has undergone significant development. *See Weekley Homes*, 180 S.W.3d at 131 n.16. Particularly relevant here, *Weekley Homes* recognized that direct-benefits estoppel can apply based on a nonsignatory seeking direct benefits from the contract outside of litigation. *See id.* at 132-35. We doubt that the Fifth Circuit would make the same *Erie* guess today in light of our jurisprudence.