In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00354-CV
_____

LENNAR HOMES OF TEXAS LAND AND CONSTRUCTION, LTD. AND LENNAR HOMES OF TEXAS SALES AND MARKETING, LTD., SUCCESSORS BY MERGER TO CALATLANTIC HOMES OF TEXAS, INC., SUCCESSOR BY MERGER TO RH OF TEXAS LIMITED PARTNERSHIP, Appellants

V.

BENJAMIN COCKERHAM AND KIMBERLY COCKERHAM, Appellees

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 21-06-07674-CV

## MEMORANDUM OPINION

In this interlocutory appeal, the question is whether the appellees, non-signatories to an arbitration agreement, may be compelled to arbitrate their claims against a home's builder when they sued the builder claiming the builder breached implied warranties of

1

workmanship and habitability based on its negligence acts in building the home. Because the homeowners bought the home from individuals who purchased the home from the builder, they didn't sign the agreements that contain the arbitration provisions. So as the plaintiffs in the suit, they are subsequent purchasers of the home and not the individuals who originally bought the home from the entity that built it.

Without specifying a reason for its ruling, the trial court denied the motion to enforce the arbitration agreement. The defendants in the suit, two successor partnerships who answered for the builder and claimed to have acquired the builder by merger, filed this appeal.

When the defendant's alleged liability is based on a contract that contains an arbitration clause, Texas law prevents a non-signatory plaintiff to the contract from avoiding an "arbitration clause that was part of that contract."[1] We conclude that under the doctrine of direct-benefits estoppel, the agreement to arbitrate in the contract executed by the builder and the couple that originally purchased the home is valid and enforceable against the second couple. We also conclude that all

---

[1] *Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*, 672 S.W.3d 367, 377 (Tex. 2023) (cleaned up).

claims the plaintiffs filed against the builder fall within the scope of the contract's arbitration clause.

Consequently, we hold the trial court erred in denying the defendants' motion to compel arbitration. The trial court's order denying the motion to compel arbitration is reversed, and the cause is remanded to the trial court for further proceedings consistent with the opinion.

## Background

In May 2016, Ray and Kimberly Wideman signed a purchase-and-sale agreement (the contract) with CalAtlantic to build a home in the Woodforest Subdivision in Montgomery County, Texas. The contract included an arbitration clause, which applied to the sale. The arbitration agreement in the contract provides:

> This transaction involves interstate commerce and any dispute (whether contract, warranty, tort, statutory or otherwise) . . . shall first be submitted to mediation and, if not settled during mediation, shall thereafter be submitted to binding arbitration as provided by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.), and not by or in a court of law. All decisions respecting the arbitrability of any dispute shall be decided by the arbitrator.

The contract on the home included a "Limited Warranty." In it, CalAtlantic purported to disclaim all implied warranties. The disclaimer language in the Limited Warranty states:

3

Except as specifically set forth in this Agreement, You agree that the only express warranties that we give to You relating to the property and/or improvements are contained in the Your New Home Insured Limited Warranty, which is incorporated herein by reference for all purposes.

To the extent permitted by law Your New Home Insured Limited Warranty supersedes all implied warranties. You agree and understand that by signing this Agreement You are waiving any claim or cause of action under any theory of implied warranty, including the theory of implied warranty of good and workmanlike construction, and that such implied warranty is expressly replaced by the terms of the Your New Home Insured Limited Warranty.[2]

Under the Limited Warranty, the Widemans received a ten-year, transferrable warranty on their new home. The Limited Warranty includes performance standards that applied to the home's construction. Even so, the performance standards contain exceptions excluding several types of damages from coverage under the home's Limited Warranty. The excluded items included damages caused by the homeowner, cosmetic defects, and water damage. The Limited Warranty also disclaimed damages caused "by a condition not resulting in actual physical damage to the Home," including "uninhabitability or health risk due to the presence or consequences of such things as . . . mold[.]"

_____

[2]Capitalization removed.

4

The contract included a disclosure addressing "Indoor Air Quality."
As to indoor air, CalAtlantic's agreement with the Widemans' states:

> Residential construction methods cannot keep out all indoor air contaminants. Contaminants such as pollen, dust mites, mold and other organics are a normal part of a residential home's indoor air environment. Maintaining indoor air quality after Settlement is Your responsibility and requires regular cleaning, maintenance and timely repair of the Home. If excessive moisture is present in Your Home, You should immediately remove the moisture and repair the source of the moisture. We will not be responsible for damage to Your Home from failure to adequately and timely clean, maintain and repair Your Home. You agree that Your sole remedy for damages caused by mold, other fungi or other indoor air contaminants shall be the remedy set forth in the warranty documents provided to You.

In October 2018, the Widemans sold Benjamin and Kimberly Cockerham their home. Nearly three years later, in June 2021, the Cockerhams sued CalAtlantic, alleging there were construction defects in the home, which had "caused significant mold growth in Plaintiffs' home." The Cockerhams alleged the defects caused "extreme and inappropriate humidity and moisture levels to develop in the Home's interior," which resulted in "water damage and the development of elevated mold levels." According to their petition, when CalAtlantic sold the home, it violated the DTPA, breached the implied warranties of habitability and workmanship, and had been negligent in the

5

construction methods it used in building the home. The theory in the Cockerham's petition is that the construction methods CalAtlantic used in building the home created the conditions that allowed mold to grow in the home.

In response to the suit, Lennar Homes of Texas Land and Construction, Ltd. and Lennar Homes of Texas Sales and Marketing, Ltd. answered. In their answer, Lennar Homes Land and Construction and Lennar Homes of Texas Sales and Marketing alleged they were the "successors by merger to CalAtlantic Homes of Texas Inc., [the] successor by merger to RH of Texas limited partnership." For convenience, we will refer to the appellants collectively as "Lennar."[3]

Lennar attached two exhibits to support its motion to compel arbitration: (1) a copy of the purchase-and-sale agreement, which we are calling the contract, and (2) a copy of CalAtlantic's "New Home Warranty Program Insured Limited Warranty." Both the contract and the Limited

---

[3]Even though the appellate record doesn't include evidence that establishes the Lennar partnerships are the entities that "merged" with CalAtlantic, as Lennar's answer alleges, the Cockerhams have never contested that claim either in the trial court or on appeal. For purposes of the appeal, we accept the claim that the two Lennar partnership entities are the successors "by merger" as an undisputed fact for purposes of this appeal. *See* Tex. R. App. P. 38.1(g).

6

Warranty contain arbitration clauses. Under the arbitration agreements in both exhibits, the Widemans agreed that the rules of the Federal Arbitration Act would apply to the arbitration of any disputes if a dispute arose under either the contract or the Limited Warranty.

The Cockerhams don't dispute that the arbitration clauses in the contract and Limited Warranty are enforceable against the Widemans had the Widemans been the plaintiffs who sued CalAtlantic or Lennar. For its part, Lennar recognizes that the Cockerhams didn't sign the contract or the Limited Warranty that it seeks to enforce. That said, in the trial court Lennar argued the arbitration agreements in the contract and Limited Warranty are enforceable against the Cockerhams under the doctrine of direct-benefits estoppel because the Cockerhams had sued to enforce benefits based on the Widemans' purchase of the home. According to the argument Lennar made in its motion to compel, the Cockerhams could not on one hand seek to enforce terms of the contract or Limited Warranty without on the other hand accepting the terms of the entire agreement, which included the clauses that required the arbitration of the claims at issue in the dispute.

The Cockerhams presented the trial court with three arguments in response to Lennar's motion. First, they argued that since they didn't buy the home from CalAtlantic but bought it from the Widemans, the doctrine of direct-benefits estoppel didn't apply to their claims. Second, they argued that Lennar's theory that they had received a direct benefit by suing CalAtlantic to enforce the implied warranties that arise in the sale of a new home is a theory that has been repeatedly rejected by Texas courts. Third, the Cockerhams claimed the doctrine of direct-benefits estoppel didn't apply because their claims existed independently and did not depend on the terms of CalAtlantic's contract with the Widemans.

The trial court denied Lennar's motion to compel but did not specify the reason for its ruling. In response to the trial court's ruling, Lennar filed an interlocutory appeal.[4] On appeal, Lennar filed a brief raising one issue. It argues the trial court "erred by denying Appellants' Plea in Abatement and Motion to Compel Arbitration."

---

[4]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (authorizing appeals from interlocutory orders denying arbitration under the FAA).

Analysis

A party seeking to compel arbitration must establish: (1) the existence of a valid, enforceable arbitration agreement, and (2) the disputed claims fall within the agreement's scope.[5] Here, Lennar argues the arbitration agreement in the contract is enforceable and encompasses the Cockerhams' claims. The Cockerhams disagree. They argue that the agreements to arbitrate in the contract and Limited Warranty are unenforceable because they weren't parties to the contract with CalAtlantic, so they didn't sign the contract containing the arbitration agreements that CalAtlantic's successor Lennar asked the trial court to enforce.[6]

Whether an arbitration agreement is enforceable is reviewed de novo as a question of law.[7] Generally, courts will require the parties to a valid and enforceable arbitration agreement to submit the dispute to arbitration.[8] Yet under some circumstances, even a non-party to an

---

[5]*See Wagner v. Apache Corp.*, 627 S.W.3d 277, 284 (Tex. 2021).

[6]The Cockerhams don't dispute that the PSA contains a valid arbitration agreement that, if enforceable against them, would encompass their claims.

[7]*In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005).

[8]*In re Kellogg, Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding).

arbitration agreement may be compelled to arbitrate a claim when the non-party has filed a claim against another that is covered by an agreement to arbitrate.[9]

Courts have identified "six scenarios in which arbitration with non-signatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary."[10] In the trial court, Lennar relied on equitable estoppel. Boiled down, Lennar argued that the Cockerhams shouldn't be permitted to sue CalAtlantic and benefit from the warranties CalAtlantic created in building the home without accepting the other obligations—specifically the arbitration requirements—that are found in those agreements too.

In Lennar's motion to compel, it argued that the doctrine of direct-benefits estoppel precluded the Cockerhams from avoiding arbitration because their claims against CalAtlantic relied on CalAtlantic's contract with the Widemans. When the doctrine of direct-benefits estoppel applies, "a non-signatory plaintiff seeking the benefits of a contract is

---

[9]*Id.*
[10]*Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018).

estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes."[11]

To determine "whether a claim seeks a direct benefit from a contract containing an arbitration clause[,]" we examine the "substance of the claim," and we look past a party's "artful pleading."[12] "While the boundaries of direct-benefits estoppel are not always clear, nonparties generally must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations imposed by law."[13] In other words, "the claim must depend on the existence of the contract. . . and be unable to stand independently without the contract."[14]

While this appeal was pending, the Supreme Court of Texas decided *Lennar Homes of Texas Land & Construction, Ltd. v. Whiteley*, 672 S.W.3d 367, 372-73 (Tex. 2023). In our opinion, *Whiteley* is dispositive of the issue that Lennar has raised in this appeal. The facts in *Whiteley* are like the appeal before us in at least four respects. First, *Whiteley* involved

---

[11]*See In re Kellogg, Brown & Root, Inc.*, 166 S.W.3d at 739.
[12]*In re Weekley Homes*, 180 S.W.3d at 131-32.
[13]*In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761 (Tex. 2006).
[14]*G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527-28 (Tex. 2015) (cleaned up).

a plaintiff who sued a homebuilder alleging that defects in the construction of a home by its builder were responsible for creating the conditions that allowed mold to grow in the home. Second, the plaintiff in *Whiteley* was a subsequent purchaser of the home, not the home's original purchaser. Third, in *Whiteley,* the plaintiff sued the builder for negligent construction and breaching the implied warranties of habitability and good workmanship.[15] Fourth, even though the arbitration clauses in *Whiteley* and the case before us are not exactly the same, they are also very broad.[16] Even though the plaintiff in *Whiteley* did not sign the agreements containing the arbitration provisions since she was a subsequent purchaser of the home, the Supreme Court of Texas held that the doctrine of direct-benefits estoppel applied to her suit, and it required the plaintiff to arbitrate her claims.[17]

In explaining why direct-benefits estoppel applied to the plaintiff's claims in *Whiteley*, the Supreme Court of Texas also rejected the same arguments the Cockerhams relied on in the trial court. For example, the Cockerhams argued that when building the home, CalAtlantic breached

_____

[15]*Whiteley*, 672 S.W.3d at 373-74.
[16]*Id*. at 372-73.
[17]*Id*. at 377-80.

12

the implied warranties workmanship and habitability. And like the subsequent purchaser in *Whiteley*, the Cockerhams alleged that CalAtlantic was negligent when it built the Widemans' home. The Cockerhams just like the appellee in *Whiteley* argued that the implied warranties that exist are common law and apply to a builder of a new home and don't rely on and exist independently from the contract between the builder and the purchaser of a new home.

Yet the *Whiteley* Court rejected all these arguments, explaining that "a warranty which the law implies from the existence of a written contract is as much a part of the writing as the express terms of the contract."[18] The Court also said that even though "such warranties are imposed by operation of law, the obligation still arises from the contract and becomes part of the contract."[19] Thus, the Supreme Court of Texas reasoned, that it follows the warranties arising when contracts are signed by buyers and sellers of homes at common law are "*implicit in the contract* between the builder/vendor and original purchaser and are *automatically assigned to* the subsequent purchaser."[20]

---

[18]*Id.* at 377.
[19]*Id.*
[20]*Id.* at 378. (emphasis in original) (cleaned up).

Given the manner in which implied warranties arise under the law, the *Whiteley* Court explained that there are at least three reasons why implied warranty claims don't exist independently from the original sales agreement between the builder and a home's subsequent purchaser.[21] First, the Court observed that the implied warranty of workmanship (like other implied warranties) moves with a home "by operation of law, from purchaser to purchaser," so downstream purchasers of a home "cannot obtain a greater warranty than that given to the original purchaser."[22]

Second, the *Whiteley* Court noted that because the implied warranty of workmanship serves as a gap-filler claim, courts must look to the contract involved in the builder's sale of the home to determine the extent to which the implied warranty of workmanship may have been superseded.[23] So if the sales contracts includes an "express warranty" that "specifically describes the manner, performance, or quality of the [seller's] services," there may be no gaps that are required to be filled by the implied warranty of workmanship.[24] For that reason, the *Whiteley*

---

[21]*Id.* at 378.
[22]*Id.*
[23]*Id.*
[24]*Id.* (cleaned up).

Court said, a court must refer to the original contract of sale on the home to determine the extent to which the implied warranty of workmanship exists.[25]

Third, the *Whiteley* Court noted that resolving a claim for breaching the implied warranty of habitability requires that a court and factfinder look to the builder's contract with the original purchaser to determine the extent to which the builder disclosed defects existed in the home.[26] Simply put, the implied warranty of habitability requires an examination of the builder's prior disclosure of defects since the implied warranty of habitability doesn't "include defects, even substantial ones, that are known by or expressly disclosed to the buyer."[27]

We conclude the holding in *Whiteley*—that direct-benefits-estoppel applies to arbitration provisions in a builder's contract when a subsequent homeowner sues the builder alleging the builder breached the implied warranties of workmanship and habitability in constructing the home—applies to the Cockerham's claims. Under the evidence presented to the trial court, we conclude the Cockerhams' implied

---

[25]*Id.*
[26]*Id.* at 379.
[27]*Id.* (cleaned up).

warranty claims against CalAtlantic and its successor Lennar cannot stand independently from the contract and Limited Warranty executed in 2016 when the home was originally sold.

Besides the implied warranty claims, which we have discussed, the Cockerhams petition includes Deceptive Trade Practices Act and negligence claims against CalAtlantic and its successor Lennar. Under Texas law, when "the relied-upon arbitration clause is broad enough to cover both tort and contract claims, if the plaintiff pursues one claim on the contract, then the plaintiff must pursue all claims—tort and contract—in arbitration."[28]

The arbitration clause in the purchase-and-sale agreement between CalAtlantic and the Widemans is broad. We have already held that it applies to the Cockerham's breach of warranty claims. The express terms of the arbitration agreement require the parties to the arbitration agreement to arbitrate "any dispute (whether contract, warranty, tort, statutory or otherwise)[.]" We conclude the arbitration provisions are sufficiently broad to require the Cockerhams' arbitrate these claims too.

---

[28]*Id.* at 377.

## Conclusion

As a matter of law, we conclude the arbitration clause is broad enough to cover all claims the Cockerhams filed against CalAtlantic and its successor, Lennar. We sustain Lennar's sole issue. We reverse the trial court's order denying Lennar's motion to compel arbitration and remand the case to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

HOLLIS HORTON
Justice

Submitted on March 6, 2023
Opinion Delivered November 16, 2023

Before Golemon, C.J., Horton and Johnson, JJ.