

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00888-CV

**SPECIALTY SELECT CARE CENTER OF SAN ANTONIO, LLC**
d/b/a Casa Rio Healthcare and Rehabilitation,
Appellant

v.

Jose **FLORES**, as Next Friend of Julie Flores,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-04577
Honorable Karen H. Pozza, Judge Presiding

Opinion by:   Sandee Bryan Marion, Chief Justice

Sitting:   Sandee Bryan Marion, Chief Justice
            Marialyn Barnard, Justice
            Luz Elena D. Chapa, Justice

Delivered and Filed:  September 2, 2015

REVERSED AND RENDERED

This is an appeal of a trial court's order denying a motion to compel arbitration filed by

Specialty Select Care Center of San Antonio, LLC d/b/a Casa Rio Healthcare and Rehabilitation.

After the parties' briefs were filed, this court abated this appeal pending the Texas Supreme Court's

decisions in three appeals from this court. *See Williamsburg Care Co. L.P. v. Acosta*, 406 S.W.3d

711 (Tex. App.—San Antonio 2013), *rev'd*, 461 S.W.3d 530 (Tex. 2015); *Fredericksburg Care*

*Co. L.P. v. Lira*, 407 S.W.3d 810 (Tex. App.—San Antonio 2013), *rev'd*, 461 S.W.3d 529 (Tex.

2015); *Fredericksburg Care Co. L.P. v. Perez*, 406 S.W.3d 313 (Tex. App.—San Antonio 2013),

*rev'd*, 461 S.W.3d 513 (Tex. 2015). After the Texas Supreme Court issued its opinions in those appeals, this appeal was reinstated.

Specialty Select contends the trial court erred in denying its motion to compel because: (1) the arbitration agreement was not required to comply with section 74.451 of the Texas Civil Practice and Remedies Code ("Code"); (2) a valid, binding arbitration agreement exists which is not ambiguous or unconscionable; and (3) Specialty Select did not waive its right to compel arbitration. Because we hold the trial court erred in denying Specialty Select's motion to compel, we reverse the trial court's order denying the motion, render judgment granting the motion, and remand this cause to the trial court for further proceedings consistent with this opinion, including the grant of an appropriate stay. TEX. CIV. PRAC. & REM. CODE ANN. § 171.025(a) (West 2011).

### BACKGROUND

In November of 2011, Julie Flores was admitted as a resident of Specialty Select's nursing home facility. In April of 2012, Flores's finger was fractured.

In March of 2013, Jose Flores, who was Julie's husband, sued as next friend of Julie, alleging Specialty Select was negligent and grossly negligent in Flores's medical care and treatment. On November 5, 2013, Jose amended his petition to assert the claims as the representative of Julie's estate.

On November 26, 2013, Specialty Select moved to compel arbitration. On December 5, 2013, a hearing was held on the motion, and the trial court took the matter under advisement. On December 13, 2013, the trial court signed an order denying the motion to compel.

### SECTION 74.451

When the trial court held its hearing on Specialty Select's motion to compel, this court had held section 74.451 of the Code was a law enacted for the purpose of regulating the business of

insurance and was exempted from preemption by the Federal Arbitration Act.[1]  *See Perez*, 406 S.W.3d at 315; *Acosta*, 406 S.W.3d at 713; *Lira*, 407 S.W.3d at 812.  Both parties extensively focused on this court's holding during the trial court's hearing on the motion to compel.  As previously noted, however, the Texas Supreme Court reversed our judgments, holding section 74.451 is not a law enacted for the purpose of regulating the business of insurance and is not a basis for a trial court to deny a motion to compel arbitration under the FAA.  *Perez*, 461 S.W.3d at 528; *Acosta*, 461 S.W.3d at 531; *Lira*, 461 S.W.3d at 529.  Accordingly, if the trial court denied the motion to compel on this basis, the trial court erred.  Therefore, we now address the other grounds presented to the trial court as a basis for denying the motion to compel.

### ARBITRATION AGREEMENT

"[A] party seeking to compel arbitration must establish that a valid arbitration agreement exists and that the claims at issue fall within the scope of that agreement."[2]  *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015).  Although there is a presumption favoring agreements to arbitrate under the FAA, "the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists, because the purpose of the FAA [is] to make arbitration agreements as enforceable as other contracts, not more so."  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737-38 (Tex. 2005) (internal citations omitted).  "Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate."  *Id*. at 738; *see also G.T. Leach Builders, LLC*, 458 S.W.3d at 524.

---

[1] The parties do not dispute that the arbitration provision in question is governed by the FAA.

[2] Although Jose challenged the existence of a valid agreement to arbitrate, Jose did not challenge that the underlying claims would be within the scope of the arbitration agreement if the agreement was valid and binding.

A.      Validity of Agreement

In response to Specialty Select's motion to compel, Jose asserted the arbitration agreement was not valid and enforceable because the agreement was ambiguous and unconscionable.

1.      Ambiguity

In arguing the arbitration agreement was ambiguous, Jose asserted the arbitration agreement was unenforceable because it contained a blank for the name of the resident. In its brief, Specialty Select contends the arbitration agreement contains no ambiguity because it was executed as part of the admissions process which required the execution of several documents.

"[A] contract can consist of more than one document." *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010). "Documents pertaining to the same transaction may be read together, even if they are executed at different times and do not reference each other, and courts may construe all the documents as if they were part of a single, unified instrument." *Id*. (internal citations omitted). In this case, the arbitration agreement and admissions agreement were executed as part of the same transaction, and the admissions agreement and other documents identify Julie as the resident. Accordingly, the blank in the arbitration agreement does not render it ambiguous or unenforceable.

2.      Unconscionability

In Jose's response to Specialty Select's motion to compel, he also asserted the arbitration agreement was unconscionable because the applicable arbitration rules: (1) do not allow for gross negligence damages; (2) severely limit discovery; (3) require the plaintiff to bear an unreasonable amount of the cost; (4) arbitrarily select an arbitrator; and (5) contain an illusory promise regarding the enforceability of the rules and procedures. Jose also asserted the arbitration agreement contained provisions that violated the applicable arbitration rules. At the hearing on the motion to compel, Jose's attorney made a reference to unconscionability, but did not argue any of these

grounds in detail.[3] In its letter reply filed after the trial court's hearing, Specialty Select pointed out that although Jose's response asserted unconscionability, the response did not "cite to any authority or evidence to support these conclusory allegations."

In Jose's brief, he mirrors the allegations made in his response without providing any citations to authority other than a citation to one opinion listing the two types of unconscionability and stating that courts can consider both types. *But see* TEX. R. APP. P. 38.2(a)(1), 38.1(i) (stating appellee's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities"). Assuming Jose has not waived unconscionability as a basis for the trial court to deny the motion to compel, we conclude Jose has not established the agreement was unconscionable.

With regard to Jose's contention that the applicable arbitration rules do not allow for gross negligence damages, we note the rules state the arbitrator may award exemplary damages based on a showing of reckless disregard for the rights of another party. This is either equivalent to a gross negligence standard or, even perhaps, a slightly lower standard. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 n. 19 (Tex. 2006) (defining "reckless disregard" and "conscious indifference" to mean that a party knew the relevant facts but did not care about the result); *Dillard Dept. Stores, Inc. v. Silva*, 148 S.W.3d 370, 373-74 (Tex. 2004) (defining "gross negligence" as when an actor has an actual, subjective awareness of an extreme degree of risk but proceeds in conscious indifference to the rights, safety, or welfare of others); *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001) (defining "gross negligence" as when the defendant

---

[3] After arguing the section 74.451 objection to arbitration, Jose's attorney stated, "And so basically, I have several objections to the arbitration clause. First, it doesn't apply with Chapter 74 — and CPRC 74.451. Second, Mr. Flores did not have the authority to bind Ms. Flores to the arbitration agreement. Third, that there's been waiver by the substantial [invocation] of the judicial process by the defendants, because we have been litigating this case for eight months and had several motions, motions to dismiss, discovery. Also, the contract is ambiguous and the contract is — The terms of the arbitration agreement are unconscionable. But I think this case from San Antonio is dispositive. I don't feel like I need to go into all the other four arguments unless you would like me to."

knew about an extreme degree of risk but its acts or omissions demonstrated that it did not care); TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(9) (West Supp. 2014) (defining "gross negligence" for health care liability claims to have same meaning assigned by section 41.001 of the Code); TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (West 2015) (defining "gross negligence" to mean "an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others"). Also, with regard to Jose's argument regarding arbitration expenses, Jose had the burden of proving the likelihood of incurring substantial arbitration costs and fees, and Jose did not present any such evidence. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 748, 756-57 (Tex. 2001). Therefore, because Jose did not satisfy his burden of proving the agreement was unconscionable, the trial court could not have denied the motion to compel on this basis. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (party alleging unconscionability has burden to prove it).

B.    Enforceability as to Julie's Claims

In its brief, Specialty Select asserts three bases on which it contends Julie's claims are subject to the arbitration agreement: (1) actual or apparent authority; (2) third party beneficiary; and (3) estoppel. It is undisputed that Julie did not sign the agreement. In addition, for purposes of this opinion, we will assume Jose did not have actual or apparent authority to sign the arbitration agreement on Julie's behalf, resulting in her being a non-signatory to the agreement.[4]

---

[4] In his brief, Jose states, "Assuming that Mr. Flores did sign the arbitration agreement, an assumption which is not supported by the record, Ms. Flores is still not bound." In his response to the motion to compel Jose asserted, "Casa Rio presents no evidence which would prove that Mr. Flores had the authority to sign the arbitration agreement on

Equitable estoppel is one theory that may bind a non-signatory to an arbitration agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739. "Although state law determines the validity of an arbitration agreement, courts have applied both federal and state law to determine the related, but distinct, issue of whether non-signatory plaintiffs should be compelled to arbitrate their claims." *Id*. at 738. Pending a decision from the United States Supreme Court, the Texas Supreme Court has held that Texas courts should apply state law "while endeavoring to keep it as consistent as possible with federal law." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005); *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739.

1.    Waiver

Jose contends Specialty Select is not entitled to rely on estoppel as a theory because it did not assert the theory before the trial court. In its motion to compel, Specialty Select argued the arbitration agreement was valid and binding as to Julie's claims; therefore, it had no reason to assert estoppel. In his response, however, Jose asserted the agreement was not valid and that estoppel did not apply, contending:

> Furthermore, Mr. Flores is not equitably estopped from denying his claims are subject to arbitration because an equitable estoppel claim would only apply if Mr. Flores attempted to derive a direct benefit from the contract containing the arbitration clause. *In re Kellogg Brown*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding). Mr. Flores had no claim of his own; the claims belong to Ms. Flores' estate. Ms. Flores' claims arise not from contract but from tort.

At the hearing on the motion to compel, Specialty Select's attorney did not expressly refer to "estoppel" but did argue the following:

> . . . . Finally Judge, I would like to address the authority issue. I simply think it is disingenuous to say that Mr. Flores was able to sign these admission agreements on behalf of his wife, but now he's not subject to them on behalf of her estate. You know, what's good for the goose is good for the gander. You know, he signed the arbitration agreement along with all the other resident admission agreements that

---

behalf of Ms. Flores." The argument that Jose did not have "authority" to sign implies that Jose did sign the agreement, and the response never expressly asserted Jose did not sign the agreement.

said that, you know, I'm signing this on behalf of her, as her responsible party. He's now brought this lawsuit on behalf of her estate for her. These are not individual claims. Because of that, there's a corollary there and those must — the arbitration agreement must be enforceable against that estate, Judge. It would be a different question if he was bringing claims on his own. That's not a question before you, and I believe that arbitration agreement is binding because of that.

In a letter brief to the trial court filed after the hearing, Specialty Select expressly referenced "equitable estoppel" as a theory which can bind non-signatories, citing *In re Kellogg Brown & Root, Inc.*, which discusses "direct benefits estoppel." 166 S.W.3d at 739-42. The letter brief further noted the arbitration agreement was executed in conjunction with the admissions agreement which was "specifically for the purpose of providing [Julie] with care." Finally, the letter brief concluded, "The fact remains that Plaintiff, on behalf of Julie Flores, knowingly and willingly entered into the agreement that the Estate of Julie Flores no longer wishes to honor." Based on the foregoing, we hold estoppel was asserted as a theory before the trial court.

    2.    Analysis

Direct benefits estoppel can bind a non-signatory in two ways. *See In re Weekley Homes, L.P.*, 180 S.W.3d at 132-33; *see also ENGlobal U.S., Inc. v. Gatlin*, 449 S.W.3d 269, 275 (Tex. App.—Beaumont 2014, no pet.) (discussing two approaches). First, if the non-signatory sues to enforce a contract containing an arbitration provision or pursues a claim on the contract, the non-signatory will be bound to arbitrate. *See In re Weekley Homes, L.P.*, 180 S.W.3d at 131-32. The second way a non-signatory can be bound is if the non-signatory "deliberately seeks and obtains substantial benefits from the contract itself." *Id*. at 132. Although recognizing the application and boundaries of this second type of estoppel "are not entirely clear," the Texas Supreme Court has reasoned "when a nonparty consistently and knowingly insists that others treat it as a party, it cannot later turn its back on the portions of the contract, such as an arbitration clause, that it finds

distasteful. A nonparty cannot both have his contract and defeat it too." *Id*. at 135 (internal citations omitted).

In this case, Julie was admitted to Specialty Select in November of 2011, and was a resident of the facility until May of 2013. Accordingly, Julie sought and obtained substantial and direct benefits from the admissions agreement through the services she was provided. Therefore, because we read all of the admissions documents as if they were part of a single, unified instrument, *In re Laibe Corp.*, 307 S.W.3d at 317, we conclude Julie's claims are subject to arbitration based on the second theory of direct benefits estoppel.[5] *See In re Weekley Homes, L.P.*, 180 S.W.3d at 132; *see also THI of South Carolina at Magnolia Manor-Inman, LLC v. Gilbert*, No. 7:13-CV-2929-BHH, 2014 WL 6863550, at \*4 (D. S.C. Oct. 31, 2014) ("having obtained for Ms. Gilbert the benefits of admission and treatment at Magnolia Manor-Inman pursuant to the Admission Contract, the defendant is estopped from denying the enforceability of the Arbitration Provision"). Because we hold Julie's claims are subject to arbitration under the theory of direct benefits estoppel, we do not address whether Julie's claims are subject to arbitration on the other two bases asserted by Specialty Select.

## WAIVER

In his response to Specialty Select's motion to compel, Jose asserted Specialty Select waived its right to compel arbitration by engaging in extensive discovery before filing its motion to compel. Specialty Select contends its actions did not constitute waiver.

---

[5] In his brief, Jose makes an argument that requiring Julie to arbitrate would violate the Medicare and Medicaid laws that prohibit a nursing home facility from charging, soliciting, accepting, or receiving any "gift, money, donation, or other consideration" in addition to the amount paid under the state's Medicaid plan as a precondition of admission. We note, however, that the arbitration agreement stated, "the execution of this Arbitration is not a precondition to the furnishing of services to the Resident by the Facility."

"[A] party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice." *Perry Homes v. Cull*, 258 S.W.3d 580, 589-90 (Tex. 2008). When the relevant facts are undisputed, "whether a party has waived its right to arbitrate is a question of law." *G.T. Leach Builders, LLC*, 458 S.W.3d at 511. "Due to the strong presumption against waiver, the hurdle is a high one." *Perry Homes*, 258 S.W.3d at 590.

For purposes of this opinion, we will assume, without deciding, that Specialty Select substantially invoked the judicial process and focus our attention on the second prong of the waiver analysis which required Jose to show the judicial process was substantially invoked to his "detriment or prejudice." *Perry Homes*, 258 S.W.3d at 589-90. "Detriment or prejudice, in this context, refers to an inherent unfairness caused by a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage." *G.T. Leach Builders, LLC*, 458 S.W.3d at 515 (internal citations omitted). "Prejudice may result when a party seeking arbitration first sought to use the judicial process to gain access to information that would not have been available in arbitration, but propounding discovery will not, in and of itself, result in waiver of a right to compel arbitration." *Id*. "[S]howing prejudice is generally an evidentiary burden." *IBS Asset Liquidations LLC v. Servicios Multiples Del Norte SA de CV*, 419 S.W.3d 573, 575 (Tex. App.—San Antonio 2013, pet. denied). "Generalized complaints about delay and expense, without evidentiary support, are insufficient to establish prejudice." *Id*.

In this case, Jose did not prove Specialty Select used the judicial process to gain access to information that would not have been available in arbitration. Although Jose's attorney stated in an affidavit that the discovery obtained by Specialty Select would not be allowed in arbitration, Jose presented no evidence to support this conclusory statement. The applicable arbitration rules give the arbitrator discretion to allow reasonable discovery, and given that only one set of discovery was propounded by Specialty Select and Specialty Select had not taken any depositions,

Jose did not establish that the information Specialty Select obtained in its limited discovery would not have been available in arbitration.

In addition, the affidavit of Jose's attorney stated, "Plaintiff has also incurred significant attorney fees and expenses." This generalized complaint, however, is not sufficient to establish prejudice absent evidentiary support.[6] *See id.*

Because Jose did not prove he was prejudiced by Specialty Select's delay in filing its motion to compel arbitration, Specialty Select did not waive its right to arbitration.

### CONCLUSION

Because Julie obtained substantial and direct benefits from the admissions agreement through the services Specialty Select provided, and we read the admissions agreement and the arbitration agreement as a unified instrument, the trial court erred in denying Specialty Select's motion to compel because Julie's claims are subject to arbitration under the theory of direct benefits estoppel. We reverse the trial court's order, render judgment granting the motion to compel, and remand the cause for further proceedings consistent with this opinion, including the grant of an appropriate stay. TEX. CIV. PRAC. & REM. CODE ANN. § 171.025(a) (West 2011).

Sandee Bryan Marion, Chief Justice

---

[6] In his brief, Jose contends Specialty Select "turned to arbitration only after litigation in the trial court was going poorly for" it. Jose contends Specialty Select refused to mediate even after the trial court signed an order compelling mediation, and Jose agreed to waive mediation only if the case would proceed to trial in February of 2014. Jose further contends Jose sent "gross negligence discovery" to Specialty Select on November 26, 2013, which was the same day Specialty Select filed the motion to compel. Jose does not provide any record cites to support these assertions or demonstrate how the assertions establish prejudice. We note the motion to compel was filed before the December 10, 2013 deadline for mediation set forth in the trial court's order.