**Opinion filed May 25, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00229-CV

_____

**TRAVELERS INDEMNITY COMPANY, Appellant**

**V.**

**GUSTINE INDEPENDENT SCHOOL DISTRICT, Appellee**

**On Appeal from the 220th District Court**
**Comanche County, Texas**
**Trial Court Cause No. CV03220**

## MEMORANDUM OPINION

This appeal arises from the denial of a motion to dismiss or stay a lawsuit pending arbitration. Gustine Independent School District ("Gustine") is a member of the Texas Rural Education Association Risk Management Cooperative ("the TREA"). Travelers Indemnity Company ("Travelers") is a reinsurer of the TREA. The reinsurance certificate between the TREA and Travelers includes a clause requiring arbitration of disputes that arise under the reinsurance certificate.

After several of Gustine's buildings were damaged by wind and hail in May 2019, Gustine filed suit against the TREA and Travelers. This interlocutory appeal was filed by Travelers after the trial court denied its request to dismiss or stay Gustine's claims in lieu of arbitration.

Travelers has also filed a motion to compel arbitration against Gustine and two other school districts in the United States District Court for the District of Connecticut ("the federal court"). After Travelers filed its appeal of this matter, the federal court denied Travelers' motion to compel arbitration. We hold that the judgment of the federal court now precludes any determination on the issue of arbitrability in this court or in the court below. We also hold that, in any event, Gustine is not required to arbitrate its claims against Travelers under the terms of the reinsurance agreement. As such, we affirm the order of the trial court.

*Background Facts*

The TREA is a self-funded intergovernmental risk pool. It provides property coverage to Gustine pursuant to the terms of a coverage agreement form that is similar to an insurance policy. The TREA, in turn, is insured under a Property Facultative Reinsurance Certificate issued by Travelers. Under the terms of the reinsurance certificate, Travelers is liable for any property loss that is outside of a $500,000 retention. Travelers is not a party to the coverage agreement, and Gustine is not a party to the reinsurance certificate.

The reinsurance certificate states that the TREA has an obligation to investigate any claims or suits relating to coverage provided by Travelers. However, once the claim exceeds the retained limit, Travelers assumes the duty to investigate. The certificate provides that, notwithstanding Travelers' duty to investigate, the TREA is ultimately obligated to make "all payments due" under the coverage agreement. The reinsurance certificate also contains an arbitration clause, which includes the following language:

2

As a condition precedent to any right of action hereunder, any dispute between [the TREA] and [Travelers] arising out of, or relating to the formation, interpretation, performance or breach of this CERTIFICATE, whether such dispute arises before or after termination of this CERTIFICATE, shall be submitted to arbitration.

In May 2019, a storm caused hail and wind damage to multiple buildings owned by Gustine that are included within the coverage agreement. Gustine asserted a claim against the TREA for the loss. Travelers then adjusted the claim, arriving at a final replacement cost estimate in the amount of $1,438,564.70. Gustine, on the other hand, maintains that its replacement costs are $4,149,540.80.

Gustine filed this suit against both the TREA and Travelers. In its live pleadings, Gustine alleges that Travelers mishandled the investigation and adjustment of the claim, and that Travelers made multiple misrepresentations to Gustine. Gustine also asserts claims against the TREA for failure to pay benefits under the coverage agreement.

After suit was filed, Travelers sent a demand for arbitration to counsel for Gustine. It then filed a motion to dismiss or stay the litigation pending arbitration pursuant to the Federal Arbitration Act (hereinafter the FAA). *See* 9 U.S.C. § 3. The trial court denied the motion on August 6, 2021, and Travelers filed an interlocutory appeal from the order shortly thereafter.[1]

*The Collateral Litigation*

This is one of three lawsuits that Travelers is seeking to arbitrate under the same TREA reinsurance certificate. The other two lawsuits involve claims by Alto Independent School District ("Alto") and Grapeland Independent School District

---

[1]Under the FAA, an aggrieved party is permitted to take a direct appeal from an order refusing to stay an action. 9 U.S.C. § 16(a)(1)(A); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015) (permitting interlocutory appeal in matters that are appealable under 9 U.S.C. § 16).

("Grapeland"). All three lawsuits arise out of storm-related property damage that occurred during the spring of 2019.

In *Alto*, the trial court denied Travelers' motion to dismiss or stay, and Travelers filed an interlocutory appeal. *Travelers Indem. Co. v. Alto ISD*, No. 12-21-00143-CV, 2022 WL 1668859 (Tex. App.—Tyler May 25, 2022, pet. denied) (mem. op.). On May 25, 2022, the Tyler Court of Appeals affirmed the trial court's order denying the motion. *Id.*

The trial court also denied Travelers' motion to dismiss or stay in the Grapeland litigation. *Travelers Indem. Co. v. Grapeland Indep. Sch. Dist.*, No. 12-22-00311-CV, 2023 WL 3371072, at *1 (Tex. App.—Tyler May 10, 2023, no pet. hist.) (mem. op.). On May 10, 2023, the Tyler Court of Appeals likewise affirmed the trial court's order denying the motion in *Grapeland*. *Id.* at *3.

Travelers also filed a lawsuit against Gustine, Alto, and Grapeland in the United States District Court for the District of Connecticut ("the federal action"). The federal action sought an order compelling the school districts to arbitrate their claims against Travelers. *See Travelers Indem. Co. v. Alto Indep. Sch. Dist.*, No. 3:21CV00909(SALM), 2022 WL 2981594 (D. Conn. July 28, 2022). Following the lead of the Tyler Court of Appeals in *Alto*, the federal court denied Travelers' motion to compel arbitration on July 28, 2022. *Id.* at *7. Travelers' appeal from the judgment of the federal district court is currently pending in the United States Court of Appeals for the Second Circuit. *See Travelers Indem. Co. v. Alto Indep. Sch. Dist.*, No. 22-1760 (D. Conn. filed Aug. 12, 2022).

*Travelers' Issue*

In its sole issue in this appeal, Travelers complains that the trial court erred in denying its motion to dismiss or stay Gustine's lawsuit pending arbitration.

4

*Res Judicata*

We first address the question of whether the federal court's denial of Travelers' motion to compel arbitration now precludes consideration of a stay by the trial court. In so doing, we apply Texas law, since the loss at issue occurred in Texas and the relationship between the parties is centered in Texas. *See Torrington Co. v. Stutzman,* 46 S.W.3d 829, 848 (Tex. 2000) (the "most significant relationship" test under Restatement (Second) of Conflict of Laws applies to conflicts of laws in Texas).

Travelers argues that Gustine has waived the issue of res judicata by failing to raise it in the trial court. Travelers is correct that the failure to raise a defense based on res judicata must generally be pleaded at the trial court or waived. *See Green v. Parrack*, 974 S.W.2d 200, 202 (Tex. App.—San Antonio 1998, no pet.) (res judicata must generally be pleaded or it is waived); *Fitz v. Days Inns Worldwide, Inc.*, 147 S.W.3d 467, 470 (Tex. App.—San Antonio 2004, pet. denied) (collateral estoppel must be pleaded at the trial court level or it is waived). However, Gustine has not waived the issue under these particular facts.

Waiver is the intentional relinquishment of a known right, or intentional conduct inconsistent with claiming that right. *In re RSR Corp.*, 568 S.W.3d 663, 666 (Tex. 2019) (orig. proceeding); *Legacy Bank v. Fab Tech Drilling Equip., Inc.*, 566 S.W.3d 922, 931 (Tex. App.—Eastland 2018, pet. denied). It is normally applicable in cases of res judicata and collateral estoppel because the nature of the previous judgment is known before the issue is appealed. *See Garner v. Long*, 106 S.W.3d 260, 264 (Tex. App.—Fort Worth 2003, no pet.) (December 14, 2000 judgment in estate administration had become final and had been affirmed on appeal before the issues were raised again on November 16, 2001). In this case, however, the federal court's judgment had not been rendered before Travelers filed its

interlocutory appeal, and Gustine therefore could not have waived any issues relating to the federal court's judgment prior to the appeal.

Travelers also maintains that we cannot consider the issue of res judicata because Gustine did not raise it in connection with its briefing on appeal, citing *Maples v. Maples*, 601 S.W.3d 23, 31 n.1 (Tex. App.—Tyler 2020, no pet.) ("An issue may not be raised for the first time at oral argument unless the issue has been first presented in the party's written brief."). Such a failure likewise cannot be construed as a waiver of the argument since Gustine's brief was filed on February 7, 2022, more than five months before the federal court rendered its judgment.

Furthermore, shortly after the federal court rendered judgment, Gustine filed a document entitled "Notice of New Authority." The notice included language stating that the federal action "and the court's disposition thereof are relevant here in that they involve the same parties, *i.e.,* Travelers and Gustine ISD, and the same legal and factual issues." While it would have been preferable for Gustine to have raised the issue more explicitly, such language was "sufficient to put us on notice" of a claim preclusion issue. *See St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 215 (Tex. 2020) ("St. John's briefing was 'sufficient to put the court of appeals on notice' of the ecclesiastical-abstention issues in the case and 'invite[d] the court of appeals to correct any error of law' as to that issue." (quoting *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 481 (Tex. 2019))).

We also note that the issue of res judicata was addressed on its merits in post-submission letter briefs that were filed by each of the parties. Given these circumstances, we are not inclined to elevate "form-over-substance" in a "rigid application of our preservation rules." *See Rohrmoos*, 578 S.W.3d at 481. Instead, we will consider the issue, which has been repeatedly addressed by the parties during this appeal.

"Broadly speaking, res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments." *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). Within this general doctrine are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). *Id.* "The doctrine of res judicata, or claim preclusion, bars causes of action that have already been fully adjudicated or that, with the use of diligence, could have been brought in the prior suit." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022). Collateral estoppel bars relitigation of an issue if (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *In re USAA Gen. Indem. Co.*, 629 S.W.3d 878, 883 (Tex. 2021) (orig. proceeding); *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 97 (Tex. App.—Eastland 2010, pet. denied).

Travelers does not argue that the federal action did not involve the same parties and issues that are involved in this matter. In this regard, any determination as to whether Gustine's claim is "referable to arbitration" necessarily involves the same issues that were in dispute in connection with Travelers' motion to compel arbitration in the federal action. *See* 9 U.S.C. §§ 3–4. Instead, Travelers makes two interrelated arguments.

First, Travelers argues that, because our review of the trial court's order is limited to the record as it existed when the trial court ruled, we cannot consider the federal court judgment. While an appellate court is generally limited to the record that is before it on appeal, the court may take judicial notice of facts that could have been properly judicially noticed by the trial judge. *Tafel v. State*, 536 S.W.3d 517, 523 (Tex. 2017); *Dutton v. Dutton*, 18 S.W.3d 849, 856 (Tex. App.—Eastland 2000, pet. denied) ("This court may take judicial notice, even if no one requested the trial

court to do so and even if the trial court did not announce that it would do so."). There is no dispute between the parties regarding the nature or contents of the federal court's order, nor is there a dispute as to the finality of the judgment. In this regard, the federal court order is available for review through various opinion reporting services. Given these circumstances, we believe it is appropriate for us to take judicial notice of the judgment that was rendered by the federal court during the pendency of this appeal.

Travelers also argues that the federal court's judgment cannot have a preclusive effect because it was not rendered prior to the trial court's rendition of the order denying the motion to stay. Travelers cites *Travelers Ins. Co. v. Joachim* in support of this proposition. 315 S.W.3d 860, 862 (Tex. 2010) ("The party relying on the affirmative defense of res judicata must prove . . . a prior final determination on the merits by a court of competent jurisdiction . . . ."). Travelers asserts that, because there was no *prior* determination on the merits *at the time the Court ruled on the motion to stay*, the federal court's judgment cannot have a preclusive effect. But this argument fails to account for the ongoing potential for the interlocutory order in the state trial court to be affected by a final judgment in another court.

When addressing issues relating to the preclusive effects of judgments, the Texas Supreme Court has consistently looked to the Restatement (Second) of Judgments for guidance. *See Mitchell v. MAP Res., Inc.,* 649 S.W.3d 180, 191 n.9 (Tex. 2022); *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 74–75 (Tex. 2000); *Jeanes v. Henderson*, 688 S.W.2d 100, 106 (Tex. 1985) (citing the Restatement in support of its description of collateral estoppel). As such, in addressing the question of whether the federal court's judgment can operate as res judicata on the trial court's order, we turn to the Restatement.

The Restatement provides that where "two actions which involve the same issue are pending between the same parties, it is the first *final* judgment rendered in

8

one of the actions which becomes conclusive in the other action, regardless of which action was brought first." RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. l (1982) (emphasis added). Travelers is correct that, at the time the trial court's judgment was originally rendered, it was not precluded by the federal court's decision. However, the trial court's judgment is not yet *final* because it is subject to future modification by the trial court, even while it is on review. *See* TEX. R. APP. P. 29.5 ("While an appeal from an interlocutory order is pending, the trial court retains jurisdiction of the case and unless prohibited by statute may make further orders, including one dissolving the order complained of on appeal."); *Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020) (discussing relationship between interlocutory orders and final judgments). For purposes of res judicata, the judgment of the federal court, on the other hand, has become final. *Travelers*, 2022 WL 2981594, at *7 (resolving motion to compel arbitration and terminating other pending issues); *see Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996) (a judgment is generally final for purposes of issue and claim preclusion regardless of the taking of an appeal). Once the federal court determined that Gustine was not required to arbitrate by way of its final judgment in July 2022, it precluded any contrary determination in the trial court, where a final determination of the issue was pending between the same parties. Furthermore, even if the trial court had initially ordered a stay, it would serve no purpose for such stay to remain in effect after Travelers' request to compel arbitration had been rejected by way of a final judgment in the federal court. Accordingly, we conclude that collateral estoppel now operates to prohibit Travelers' request for a stay pending arbitration.

*The Motion to Stay*

Our determination as to the effect of the federal court's judgment is sufficient to dispose of this appeal. However, even if the federal court's judgment did not

9

preclude the issue of arbitrability, the trial court did not err in rejecting Travelers' motion on the merits.

In Texas, a trial court's order denying a motion to compel arbitration is reviewed for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *Alto*, 2022 WL 1668859, at \*2. The same standard applies where, as here, the trial court has denied a request to stay a lawsuit pending arbitration. *Vets Securing Am., Inc. v. Smith*, 632 S.W.3d 272, 279 (Tex. App.—Corpus Christi–Edinburg 2021, pet. denied). In so doing, we will defer to the trial court's factual determinations if they are supported by the evidence. *Henry*, 551 S.W.3d at 115; *Alto*, 2022 WL 1668859, at \*2. However, we review its legal determinations de novo. *Henry*, 551 S.W.3d at 115; *Alto*, 2022 WL 1668859, at \*2. As such, any questions relating to the arbitrability of an agreement, including the question of whether nonsignatories are bound to such agreements, are reviewed de novo. *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 633 (Tex. 2018); *Alto*, 2022 WL 1668859, at \*2.

Under section 3 of the FAA, "the courts of the United States" are required to stay any case that is "referable to arbitration" under an "agreement in writing." 9 U.S.C. § 3. Ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015). "Because arbitration is contractual in nature, the FAA generally 'does not require parties to arbitrate when they have not agreed to do so.'" *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) (orig. proceeding) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478–79 (1989)). However, under appropriate circumstances, principles of contract law and agency will bind a nonsignatory to an arbitration agreement. *See Jody James*, 547 S.W.3d at 629.

Travelers maintains that, even though Gustine is a nonsignatory to the reinsurance certificate, it is required to arbitrate its claims under the principle of direct-benefits estoppel. Under direct-benefits estoppel, a nonsignatory seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes. *Kellogg*, 166 S.W.3d at 739. Thus, if a nonsignatory's breach-of-warranty and breach-of-contract claims are based on the terms of a written contract, then the nonsignatory cannot avoid an arbitration provision within the contract. *Id.* On the other hand, if a nonsignatory's claims can stand independently of the underlying contract, then arbitration generally should not be compelled. *Id.* at 739–40.

The central question is whether the nonsignatory "seeks, through the claim, to derive a *direct* benefit from the contract containing the arbitration provisions." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131–32 (Tex. 2005) (orig. proceeding) (emphasis added) (quoting *Kellogg*, 166 S.W.3d at 741). The mere existence of a relationship between the claims and the contract containing an arbitration provision is insufficient. *Jody James*, 547 S.W.3d at 637. Instead, when the substance of the claim arises from general obligations imposed by state law, including statutes, torts, and other common law duties, direct-benefits estoppel is inapplicable. *Id.*

In the archetypal direct-benefits case, the party opposing arbitration seeks to enforce the terms of an agreement that contains an arbitration clause. *Id.* Thus, where a trust beneficiary alleges violation of a trust agreement that contains an arbitration clause, such a dispute is subject to arbitration, even though the beneficiary is not a party to the trust agreement. *Id.* (citing *Rachal v. Reitz*, 403 S.W.3d 840 (Tex. 2013)).

In its briefing, Travelers references the contents of a demand letter that Gustine sent to Travelers in December 2019, as well as the pleadings that were amended by Gustine prior to the hearing on its motion to stay the action. It is not

11

clear whether Travelers is claiming that Gustine's allegations in these documents are relevant to the determination of whether Gustine is estopped from participating in arbitration. However, we conclude that they are not relevant.

A nonsignatory can seek the benefits of a contract by either (1) filing a lawsuit based on the contract or (2) engaging in conduct that "deliberately seeks and obtains substantial benefits from the contract itself." *Taylor Morrison of Tex., Inc. v. Ha*, 660 S.W.3d 529, 533 (Tex. 2023) (quoting *Weekley Homes*, 180 S.W.3d at 132). Where, as here, it is alleged that a nonsignatory's lawsuit seeks the benefits of a contract, the nonparty can choose whether to frame its claims in tort or "on the contract." *See Weekley Homes*, 180 S.W.3d at 132.

The FAA's stay requirements are also based on an assessment of whether the lawsuit in which the stay is sought contains "any issue referable to arbitration." 9 U.S.C. § 3. An order referring the matter to arbitration is only appropriate if the court is "satisfied that *the issue involved in such suit . . .* is referable to arbitration." *Id.* (emphasis added). As such, where direct-benefits estoppel is based on the contents of the lawsuit, and where a party seeks a stay pursuant to the FAA, the critical focus is on the "issues involved in [the] suit," which are reflected in the live pleadings of the party resisting arbitration. This process is similar to the manner in which we would assess a plea to the jurisdiction or a determination of an insurer's duty to defend a liability insurance policy. *See Abbott v. G.G.E.*, 463 S.W.3d 633, 642 (Tex. App.—Austin 2015, pet. denied) (to determine whether the court had jurisdiction to hear a case based on a challenge to the pleadings, "we look to the contents of the claimant's live pleadings"); *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 495 (Tex. 2020) (an insurer's duty to defend is determined by examining the third-party claimant's pleadings in light of the policy provisions); *Archon Invests., Inc. v. Great Am. Lloyds Ins. Co.*, 174 S.W.3d 334, 339 (Tex.

12

App.—Houston [1st Dist.] 2005, pet. denied) (the duty to defend is based on the allegations in the live pleadings).

This approach is also consistent with the manner in which Texas courts have historically assessed the question of whether direct-benefits estoppel applies. *See Weekly Homes*, 180 S.W.3d at 132 (discussion of the relationship between a nonsignatory's pleadings and direct-benefits estoppel); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 528 (Tex. 2015) (assessing the direct-benefits estoppel issue by addressing the claims asserted by the nonmovant "in its petition"); *Taylor Morrison of Tex., Inc. v. Kohlmeyer*, 634 S.W.3d 297, 306 (Tex. App.—Houston [1st Dist.] 2021, pet. filed) (assessing causes of action and factual assertions made by nonsignatory "[i]n their live pleading"); *Sam Houston Elec. Coop., Inc. v. Berry*, 582 S.W.3d 282, 289 n.5 (Tex. App.—Beaumont 2017, no pet.) (basing its analysis on nonmovant's "live pleading at the time the trial court denied [the] motion to compel arbitration"); *Loya v. Loya*, 507 S.W.3d 871, 878 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (addressing manner in which party resisting arbitration characterized herself as a shareholder "throughout her pleadings"); *ENGlobal U.S., Inc. v. Gatlin*, 449 S.W.3d 269, 277 (Tex. App.—Beaumont 2014, no pet.) (assessing direct-benefits estoppel based on nonsignatory's "live pleading"); *Tex. Petrochemicals LP v. ISP Water Mgmt. Servs. LLC*, 301 S.W.3d 879, 886 (Tex. App.—Beaumont 2009, no pet.) (compelling arbitration because "[nonmovant's] pleadings reveal that its case for partition is premised on a dispute" over whether the opposing party complied with an agreement containing an arbitration clause); *In re Ford Motor Co.*, 220 S.W.3d 21, 24 (Tex. App.—San Antonio 2006, no pet.) (analyzing direct-benefits estoppel issue based on "plaintiffs' joint petition"). It is also notable that, in assessing the issue of whether Alto was subject to direct-benefits estoppel, the Tyler Court of Appeals based its analysis on the school district's "live petition." 2022 WL 1668859, at *1.

13

With these principles in mind, we now turn to Gustine's Fourth Amended Petition, which was its live pleading at the time the trial court ruled on the motion to stay. In reviewing the petition, we look to the substance of the claim, not artful pleading. *Weekley Homes*, 180 S.W.3d at 131–32.

Gustine's petition alleges that the TREA "sold the policy, insuring the Property that is the subject of this lawsuit." It further alleges that "Defendant Travelers adjusted the claim and determined the replacement cost of the covered damage." Gustine maintains that, even though Travelers paid $723,252 to the TREA in connection with the claim, there was a long delay in which the TREA did not, in turn, convey those funds to Gustine. Gustine further maintains that Travelers' investigation was "outcome oriented" and that the TREA has "refused to fully compensate [Gustine], under the terms of the policy." There are also a number of allegations regarding Travelers' alleged misrepresentations, including misrepresentations about the claims payment process, the TREA's financial capacity to pay the claim, and the amount of the loss itself. Based on these allegations, Gustine asserts causes of action against Travelers for violation of the Texas Insurance Code, fraud, conspiracy to commit fraud, violation of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), misrepresentation, and negligence. All of these causes of action are tort claims that are commonly asserted against adjusters in the context of insurance litigation.

Travelers points to a number of allegations in Gustine's pleadings in support of its claim that Gustine is seeking a direct benefit under the terms of the reinsurance certificate. For example, Travelers points to language indicating that Travelers misrepresented "a material fact or policy provision relating to coverage" and that Travelers "made false representations." However, these allegations relate to misrepresentations about the terms of the TREA coverage agreement, and they cannot reasonably be construed as a claim to benefits under the reinsurance

certificate. Likewise, Travelers points to multiple allegations which it believes state or imply that Gustine has an expectation that Travelers is required to make direct payments to it under the reinsurance certificate. For example, the petition alleges that Gustine "made claims to Defendants for insurance proceeds," that Travelers failed "to effectuate a prompt, fair, and equitable settlement," that Travelers "was not going to fully pay the claim," and that Travelers failed "to promptly provide Plaintiff a reasonably [sic] explanation . . . for . . . denial of a claim." When read in context with Gustine's petition as a whole, however, these excerpts do not demonstrate an intent to recover benefits directly under the reinsurance certificate. The allegations in the petition are clear that the TREA, and not Travelers, is ultimately responsible for payment under the coverage agreement, and we do not believe that a claim for direct payment under the terms of the reinsurance agreement can be fairly inferred from these isolated allegations.

Travelers also points to allegations that relate to the TREA's failure to tender funds that had been paid to it under the reinsurance certificate, as described above. These allegations likewise do not seek direct benefits under the reinsurance certificate. To the contrary, they reflect an understanding that any payment of funds to Gustine must ultimately be tendered by the TREA pursuant to the coverage agreement.

Travelers further points to allegations in the petition that relate to its duty to adjust the claim, including a claim that Travelers was "tasked with . . . fully quantifying covered damages" and a claim that Travelers "failed to discover covered damages and/or fully quantify covered damages." These allegations support Gustine's tort causes of action arising out of Travelers' duty to adjust the claim, which comes "from general obligations imposed by state law, including statutes, torts and other common law duties" as opposed to a contractual obligation that is

15

owed to Gustine. *See Jody James*, 547 S.W.3d at 637. As such, they do not support direct-benefits estoppel.

Finally, Travelers points to allegations in the petition that state a measure of damages against Travelers that is similar to the measure of damages that is due under the coverage agreement. For example, Gustine asks for damages under the DTPA that are "in an amount equal to the costs of repairs" as well as the "loss of benefits that should have been paid." These claims are also insufficient to establish a direct-benefits estoppel. Even where a claimant seeks "a measure of loss that equates to the amount of a contract loss," it does not follow that direct-benefits estoppel applies, since such a claim merely *refers* to the contract. *See id.* at 638.

Based on the substance of Gustine's live pleadings at the time the motion to stay was determined by the trial court, Gustine's claims against Travelers arise out of "general obligations imposed by state law, including statutes, torts and other common law duties." *See id.* at 637. Thus, Gustine is not stating a claim that seeks the direct benefit of the reinsurance certificate. We further conclude that, in so doing, Gustine is not attempting to artfully plead a case that, in actuality, constitutes a suit "on the contract." *See Weekley Homes*, 180 S.W.3d at 131–32.

These findings are consistent with the findings of the Tyler Court of Appeals in *Alto* and *Grapeland*. In both cases, the court found that the complaints against Travelers were based on tort, DTPA, and insurance code duties—none of which arose under the terms of the reinsurance certificate. *Alto*, 2022 WL 1668859, at *4. *Grapeland*, 2023 WL 3371072, at 3*. As such, Travelers' liability was not based on expectations created by the contracts, but was necessarily extracontractual. *Alto*, 2022 WL 1668859, at *4; *Grapeland*, 2023 WL 3371072, at *3.

Our conclusions are also consistent with the United States District Court in Connecticut, which held that none of the claims asserted against Travelers, including Gustine's claims, give rise to direct-benefits estoppel. 2022 WL 2981594, at *5.

16

The federal court determined that such claims instead arise "from general obligations imposed by state law, including statutes, torts and other common law duties." *Id.* (quoting *Jody James*, 547 S.W.3d at 637).

### *This Court's Ruling*

Having held that the issue of arbitrability is precluded by the judgment in the federal action, and having determined that, in any event, Gustine's claims are not subject to direct-benefits estoppel, we overrule Appellant's sole issue. Accordingly, we affirm the order of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

May 25, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.